[Cite as *State v. New*, 2013-Ohio-3193.]

STATE OF OHIO          )          IN THE COURT OF APPEALS
                       )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN       )

STATE OF OHIO                      C.A. No.      12CA010305

    Appellant

    v.                            APPEAL FROM JUDGMENT
                                  ENTERED IN THE
BOBBIE LEE NEW                    COURT OF COMMON PLEAS
                                  COUNTY OF LORAIN, OHIO
    Appellee                      CASE No.      11CR083078

DECISION AND JOURNAL ENTRY

Dated: July 22, 2013

---

HENSAL, Judge.

{¶1}   Appellant, the State of Ohio, appeals from the judgment of the Lorain County Common Pleas Court.  For the following reasons, this Court reverses.

I.

{¶2}   On June 30, 2011, Appellee, Bobbie Lee New, was indicted for the murder of Dorothy Spencer, whose death occurred more than 35 years earlier.  Ms. Spencer was last seen alive at 9:15 p.m. on March 13, 1976, while en route to her mobile home located in Camden Township, Ohio after dining with some friends.  At 2:11 a.m. on March 14th, an anonymous female called the ambulance service line at Allen Memorial Hospital located in Oberlin, Ohio.  The caller stated that she needed help and requested an ambulance.  The caller provided directions to Ms. Spencer's home, but hung up when the dispatcher asked her to identify herself.  Medical personnel discovered Ms. Spencer alone, unconscious, and lying on her sofa with a gunshot wound to her head.  An autopsy later revealed that she also had bruising on her neck and

shoulders. Ms. Spencer died on March 17, 1976. The Lorain County Coroner ruled that her cause of death was a gunshot wound of the head.

{¶3} The Lorain County Sheriff's Office investigated the matter. At the time of her death, Ms. Spencer was in a relationship for approximately six years with New, who was married but estranged from his wife. Ms. Spencer and New lived together at the mobile home for almost two years. Several of Ms. Spencer's friends and co-workers told investigators that she feared New, and that she had told them that he beat her. Her co-workers further testified that she sometimes arrived at work with injuries, which she attributed to beatings from New, and occasionally she missed work due to such injuries. In 1971, New was charged with assault with a deadly weapon, assault and battery and carrying a concealed weapon arising out of an incident wherein he allegedly beat and threatened to kill Ms. Spencer and her daughter. New pleaded guilty to the carrying a concealed weapon charge and the rest of the charges were dropped at the request of Ms. Spencer. From the beginning of the investigation, New was the primary suspect in Ms. Spencer's shooting.

{¶4} New's whereabouts the night of Ms. Spencer's murder are unknown. Ms. Spencer's neighbor, who was 13 years old at the time, told investigators that she saw New's vehicle parked next to Ms. Spencer's vehicle at the home around 10:00 p.m. or 11:00 p.m. New's estranged wife, Rebecca New, told investigators that he stopped by her home for a few minutes sometime after 11:00 p.m. on March 13th. New's sister and brother-in-law, Zula and Ezra Strader, who lived across the street from Rebecca New, denied that New was at their home the night of March 13th. A bartender testified that New was with her the night Ms. Spencer was shot from approximately 11:00 p.m. or 12:00 a.m. until 4:45 a.m.

{¶5} Due to Ms. Spencer's condition upon medical personnel's arrival and because the home was not equipped with telephone service, investigators concluded that the anonymous telephone call that requested an ambulance had to originate from a different location. While there was no firearm found near Ms. Spencer or in the home, a subsequent search found a box for a Colt .38 revolver that contained two bullets. The gun's last owner, Charles Bogdanowitz, a friend of New's, loaned the gun to him late in 1975. New never returned the gun to Bogdanowitz. A spent shell casing was recovered from the sofa, which was later determined to match the bullets found in the box. The gun itself was never found.

{¶6} Ms. Spencer's son, Alfred Lilly, told investigators in 1976 that he received a message that New wanted to speak with him. On April 12, 1976, New allegedly approached Mr. Lilly and told him that when Lilly got out of the Army, if New was not in jail, he would tell Lilly how his mother was killed. Mr. Lilly died in 1997. There is no evidence that New ever had any further discussions with Mr. Lilly about his mother's death.

{¶7} The case was first presented to the Lorain County Grand Jury in May 1976. Charles Bogdanowitz testified before the Grand Jury about the gun that was loaned to New. Both Zula and Ezra Strader also testified in front of the Grand Jury. The Straders both testified that New was not at their home the night Ms. Spencer was shot. Mrs. Strader testified that she did not recall placing or receiving any telephone calls that night. Both Straders testified that their two sons, ages 17 and 13, were home that night. Investigators never questioned the Straders' sons. The Grand Jury returned a no bill, thus, refusing to indict New for the murder of Ms. Spencer.

{¶8} Investigators traced the telephone calls from the Strader residence. The trace revealed that the anonymous telephone call to the hospital originated from the Straders' phone.

Zula Strader was the only female who resided in the home at the time, and fit the description of the caller as a woman in her 30's. It is unclear whether this information about the trace was obtained by the State (or police) before or after the case was presented to the Grand Jury. The Straders were not confronted with the information that the telephone call originated from their home. Both Straders subsequently died. The investigation became a cold case until 2010.

{¶9} In 2010, the son of Ezra and Zula Strader, Perry Strader, contacted the Lorain County Sheriff's Department with information about Ms. Spencer's death. He stated that he awoke the night of March 13th to find his mother in his bedroom closet with a flashlight looking through a telephone book. Mrs. Strader would not tell him what was going on. He later heard his mother make a call from the telephone in the living room, but could not hear what was said. Perry Strader testified that he thought something was wrong, so he went out to the living room and saw his parents and New. He asked what was happening, to which New eventually replied that he argued with Ms. Spencer, "slapped [her] around" and eventually shot her. He assisted his uncle by giving him $60 and a winter coat. Based on the information from Perry Strader, the Lorain County Sheriff's Office reopened the investigation into Ms. Spencer's death.

{¶10} Perry Strader testified that his parents raised him to "protect family at all costs." He testified that even if investigators had interviewed him in 1976, he would not have told them what he knew unless his parents instructed him to reveal the information. He waited until his last surviving parent, Zula, died in 2010 before approaching investigators with the information as he knew his parents had perjured themselves in their Grand Jury testimony.

{¶11} After his indictment, New filed a motion to dismiss the case due to pre-indictment delay. After conducting hearings over several days, the trial court granted New's motion to dismiss the indictment due to pre-indictment delay. The State of Ohio filed a timely notice of

appeal, and presents two assignments of error for this Court's review. We rearrange the State's assignments of error to facilitate our review.

## II.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT INCORRECTLY FOUND THAT THE STATE FAILED TO JUSTIFY THE DELAY.

{¶12} The State of Ohio argues that the trial court erred when it found that the State failed to justify the 35-year delay in indicting New. This Court agrees.

{¶13} "In reviewing a decision on a motion to dismiss for pre-indictment delay, we accord deference to the trial court's findings of fact but engage in a de novo review of the trial court's application of those facts to the law." *State v. Kemp*, 8th Dist. Cuyahoga No. 97913, 2013-Ohio-167, ¶ 26. *See also State v. Saxon*, 9th Dist. Lorain No. 09CA009560, 2009-Ohio-6905, ¶ 5 ("We review a ruling on a pretrial motion to dismiss criminal charges using the de novo standard.").

{¶14} "[T]he applicable statute of limitations is the primary guarantee against [the State] bringing overly stale charges." *United States v. Marion*, 404 U.S. 307, 322 (1971), quoting *United States v. Ewell*, 383 U.S. 116, 122 (1966). New was indicted for murder under Revised Code Section 2903.02(A), which states that "[n]o person shall purposely cause the death of another * * *." There is no statute of limitations to bar the prosecution of a murder charge brought pursuant to Section 2903.02(A). R.C. 2901.13(A)(2).

{¶15} However, "the statute of limitations does not fully define [the defendant's] rights with respect to the events occurring prior to indictment." *Marion* at 324. "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in

actual prejudice to the defendant, is a violation of the right to due process of law * * *." *State v. Luck*, 15 Ohio St. 3d 150 (1984), paragraph two of the syllabus.

{¶16} *Luck*, which was reaffirmed by *State v. Whiting*, 84 Ohio St.3d 215, 217 (1998), sets forth a two-prong test to determine whether an indictment should be dismissed due to pre-indictment delay. *Luck* at ¶ 157-158. The defendant must first prove that his defense has suffered actual prejudice due to the delay in indictment. *Luck* at 157; *Whiting* at 217. If the defendant can prove actual prejudice, the burden then shifts to the state to establish a justifiable reason for the delay. *Luck* at 158; *Whiting* at 217. "[T]he prejudice suffered by the defendant must be viewed in light of the state's reason for the delay." *Luck* at 154.

{¶17} The trial court held an evidentiary hearing over two days on the issue of whether New was actually prejudiced by the 35-year delay in indictment. The trial court found that Perry Strader's testimony "is the only direct evidence of Mr. New's guilt" and that the only way for New to refute this direct evidence is with the testimony of Ezra and Zula Strader, who are deceased. The trial court found "that the [35] year delay preceding the indictment has caused actual prejudice to [New], and because Zula and Ezra Strader are the only source of direct evidence to confute the direct evidence which would be offered by Perry Strader, the Court finds that the * * * prejudice is substantial."

{¶18} The State appears to concede that New was actually prejudiced by the delay in the indictment. Although the State provided in its brief that it "disputes this finding," it develops no argument in support of this statement, and this Court declines to develop an argument for it. *See* App.R. 16(A)(7); *Cardone v. Cardone*, 9th Dist. No. 18349, 1998 WL 224934, *8 (May 6, 1998). This Court would note, however, both New and the State are prejudiced by the passage of

35 years since Ms. Spencer's death. Not only are both Ezra and Zula Spencer deceased, but other witnesses, including the lead investigator from 1976 and Ms. Spencer's son, have also died.

{¶19} Due to the trial court's finding of actual prejudice, the burden then shifted to the State to justify the delay in indictment. *Luck*, 15 Ohio St.3d 150, 158. The State argued that the delay in seeking the second indictment was justified because Perry Strader did not approach the Lorain County Sheriff's Office with his information about the night of Ms. Spencer's shooting until 2010. Although Mr. Strader was never interviewed by investigators in 1976, he testified that he would not have revealed any information even if he had been interviewed unless his parents would have told him to do so.

{¶20} The trial court was not persuaded by the State's reason for the delay, and found that the testimony offered by Perry Strader was "not unavailable" to the State in 1976. The trial court stated in the judgment entry that investigators simply "never bothered to interview [Mr. Strader]." Further, his testimony that he would not have revealed the information was "purely speculation" since he had never been interrogated by the police.

{¶21} The trial court's finding that Mr. Strader was "not unavailable" is a legal conclusion rather than a finding of fact. Accordingly, this Court reviews the finding under a de novo standard of review. *Kemp*, 2013-Ohio-167, at ¶ 26. "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Cook*, 9th Dist. No. 26360, 2012-Ohio-4250, ¶ 6.

{¶22} This Court finds that the trial court's determination that Mr. Strader was "not unavailable" to investigators during 1976 is not supported by the evidence. Mr. Strader did not reveal the information he had about that night until 2010. There is no evidence that the investigators knew about this information until Mr. Strader approached the Lorain County

Sheriff's Department in 2010. Further, Mr. Strader testified that even if investigators had interviewed him in 1976, he would not have told them what he knew about that night unless his parents told him to be forthcoming. There is no evidence that Ezra or Zula Strader ever encouraged Perry Strader to tell the investigators what he knew. In fact, they had misled investigators by denying having seen New on the night of the murder.

{¶23} The trial court further found that:

Even more relevant, after reviewing the evidence which was contained in the prosecutor's file in 1976, the court finds that no reasonable trier of fact, presented with this evidence, and after resolving any reasonable doubt in favor of Bobby New, could have reached any other conclusion, but that Bobby New murdered Dorothy Spencer.

* * *

The [S]tate of Ohio could have prosecuted Bobby New successfully with the evidence contained in [the] investigator's files in 1976, and this alone obviates any justification for the delay in prosecution[.]

{¶24} Neither conclusion, however, is supported by the facts in this case. The same evidence, with the exception of Perry Strader's testimony and possibly the telephone records that demonstrated that the anonymous call for help came from the Strader residence, was presented to the Grand Jury in 1976. The Grand Jury returned a no bill on the case. We, therefore, cannot conclude that the State could have successfully prosecuted New or that the same evidence was available to the State in 1976. Further, even if New had been prosecuted in 1976 with the evidence available to investigators at the time, it is speculation to conclude that any trier of fact would have convicted New of Ms. Spencer's murder.

{¶25} The Ohio Supreme Court stated in *Luck* that:

We believe * * * that a delay in the commencement of prosecution can be found to be unjustifiable when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant * * * or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later

decides to commence prosecution *upon the same evidence that was available to it at the time that its active investigation was ceased.*

(Emphasis added.) *Luck*, 15 Ohio St.3d 150, 158. Assuming arguendo that the investigation into the murder of Ms. Spencer was ceased through the negligence or error in judgment of the investigators, New was not indicted in 2010 with the same evidence that was available in 1976. *Id*. As this Court stated earlier, the testimony provided by Mr. Strader was not known to the State until 2010. We cannot conclude that the sole reason this evidence was not available was because the State failed to interview Perry Strader. Further, the testimony and evidence at the hearings in 2010 did not any include any evidence that the State delayed New's indictment to intentionally gain a tactical advantage.

{¶26} Based on the foregoing, this Court finds that the trial court erred when it found that Mr. Strader was not an "unavailable" witness in 1976 and that New could have been prosecuted and convicted in 1976 using the same evidence that was available to investigators at that time. Accordingly, the trial court erred in finding that the State did not justify the reason for the 35-year delay in indicting New. The State's second assignment of error is sustained.

ASSIGNMENT OF ERROR I

THE TRIAL COURT APPLIED THE INCORRECT LEGAL STANDARD TO THE FACTS AND IMPROPERLY GRANTED BOBBIE NEW'S MOTION TO DISMISS FOR PRE-INDICTMENT DELAY.

{¶27} Due to this Court's resolution of the State's second assignment of error, his first assignment of error is moot. This Court, therefore, declines to address it. App.R. 12(A)(1)(c).

III.

{¶28} The State's second assignment of error is sustained, and its first assignment of error is moot. The judgment of the Lorain County Court of Common Pleas granting New's

Motion to dismiss is reversed and the matter is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

MOORE, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellant.

GERALD M. SMITH and RICHARD D. MCCLURE, Attorneys at Law, for Appellee.