[Cite as *State v. New*, 2016-Ohio-7730.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF LORAIN )

| | |
|---|---|
| STATE OF OHIO | C.A. No. 15CA010754 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BOBBIE LEE NEW | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No. 11CR083078 |

DECISION AND JOURNAL ENTRY

Dated: November 14, 2016

SCHAFER, Judge.

{¶1}   Defendant-Appellant, Bobby New, appeals the judgment of the Lorain County Court of Common Pleas convicting him of murder. For the reasons that follow, we affirm.

I.

{¶2}   This is the second time that this matter has come before us. In the first appeal, we outlined the relevant facts as follows:

On June 30, 2011, [New] was indicted for the murder of Dorothy Spencer, whose death occurred more than 35 years earlier. Ms. Spencer was last seen alive at 9:15 p.m. on March 13, 1976, while en route to her mobile home located in Camden Township, Ohio after dining with some friends. At 2:11 a.m. on March 14th, an anonymous female called the ambulance service line at Allen Memorial Hospital located in Oberlin, Ohio. The caller stated that she needed help and requested an ambulance. The caller provided directions to Ms. Spencer's home, but hung up when the dispatcher asked her to identify herself. Medical personnel discovered Ms. Spencer alone, unconscious, and lying on her sofa with a gunshot wound to her head. An autopsy later revealed that she also had bruising on her neck and shoulders. Ms. Spencer died on March 17, 1976. The Lorain County Coroner ruled that her cause of death was a gunshot wound of the head

The Lorain County Sheriff's Office investigated the matter. At the time of her death, Ms. Spencer was in a relationship for approximately six years with New, who was married but estranged from his wife. Ms. Spencer and New lived together at the mobile home for almost two years. Several of Ms. Spencer's friends and co-workers told investigators that she feared New, and that she had told them that he beat her. Her co-workers further testified that she sometimes arrived at work with injuries, which she attributed to beatings from New, and occasionally she missed work due to such injuries. In 1971, New was charged with assault with a deadly weapon, assault and battery and carrying a concealed weapon arising out of an incident wherein he allegedly beat and threatened to kill Ms. Spencer and her daughter. New pleaded guilty to the carrying a concealed weapon charge and the rest of the charges were dropped at the request of Ms. Spencer. From the beginning of the investigation, New was the primary suspect in Ms. Spencer's shooting.

New's whereabouts the night of Ms. Spencer's murder are unknown. Ms. Spencer's neighbor, who was 13 years old at the time, told investigators that she saw New's vehicle parked next to Ms. Spencer's vehicle at the home around 10:00 p.m. or 11:00 p.m. New's estranged wife, Rebecca New, told investigators that he stopped by her home for a few minutes sometime after 11:00 p.m. on March 13th. New's sister and brother-in-law, Zula and Ezra Strader, who lived across the street from Rebecca New, denied that New was at their home the night of March 13th. A bartender [at the Honky Tonk bar] testified that New was with her the night Ms. Spencer was shot from approximately 11:00 p.m. or 12:00 a.m. until 4:45 a.m.

Due to Ms. Spencer's condition upon medical personnel's arrival and because the home was not equipped with telephone service, investigators concluded that the anonymous telephone call that requested an ambulance had to originate from a different location. While there was no firearm found near Ms. Spencer or in the home, a subsequent search found a box for a Colt .38 revolver that contained two bullets. The gun's last owner, Charles Bogdanowitz, a friend of New's, loaned the gun to him late in 1975. New never returned the gun to Bogdanowitz. A spent shell casing was recovered from the sofa, which was later determined to match the bullets found in the box. The gun itself was never found.

Ms. Spencer's son, Alfred Lilly, told investigators in 1976 that he received a message that New wanted to speak with him. On April 12, 1976, New allegedly approached Mr. Lilly and told him that when Lilly got out of the Army, if New was not in jail, he would tell Lilly how his mother was killed. Mr. Lilly died in 1997. There is no evidence that New ever had any further discussions with Mr. Lilly about his mother's death.

The case was first presented to the Lorain County Grand Jury in May 1976. Charles Bogdanowitz testified before the Grand Jury about the gun that was loaned to New. Both Zula and Ezra Strader also testified in front of the Grand

Jury. The Straders both testified that New was not at their home the night Ms. Spencer was shot. Mrs. Strader testified that she did not recall placing or receiving any telephone calls that night. Both Straders testified that their two sons, ages 17 and 13, were home that night. Investigators never questioned the Straders' sons. The Grand Jury returned a no bill, thus, refusing to indict New for the murder of Ms. Spencer.

Investigators traced the telephone calls from the Strader residence. The trace revealed that the anonymous telephone call to the hospital originated from the Straders' phone. Zula Strader was the only female who resided in the home at the time, and fit the description of the caller as a woman in her 30's. It is unclear whether this information about the trace was obtained by the State (or police) before or after the case was presented to the Grand Jury. The Straders were not confronted with the information that the telephone call originated from their home. Both Straders subsequently died. The investigation became a cold case until 2010.

In 2010, the son of Ezra and Zula Strader, Perry Strader, contacted the Lorain County Sheriff's Department with information about Ms. Spencer's death. He stated that he awoke the night of March 13th to find his mother in his bedroom closet with a flashlight looking through a telephone book. Mrs. Strader would not tell him what was going on. He later heard his mother make a call from the telephone in the living room, but could not hear what was said. Perry Strader testified that he thought something was wrong, so he went out to the living room and saw his parents and New. He asked what was happening, to which New eventually replied that he argued with Ms. Spencer, "slapped [her] around" and eventually shot her. He assisted his uncle by giving him $60 and a winter coat. Based on the information from Perry Strader, the Lorain County Sheriff's Office reopened the investigation into Ms. Spencer's death.

Perry Strader testified that his parents raised him to "protect family at all costs." He testified that even if investigators had interviewed him in 1976, he would not have told them what he knew unless his parents instructed him to reveal the information. He waited until his last surviving parent, Zula, died in 2010 before approaching investigators with the information as he knew his parents had perjured themselves in their Grand Jury testimony.

*State v. New*, 9th Dist. Lorain No. 12CA010305, 2013-Ohio-3193, ¶ 2-10 ("*New I*").

**{¶3}** After police received this information from Perry, charges against New were again presented to the grand jury. This time, the grand jury indicted New on one count of murder in violation of R.C. 2903.02(A). New moved to dismiss the indictment on the basis of pre-indictment delay. After the trial court granted New's motion and dismissed the matter, the

State appealed, arguing that the 35-year delay between the killing and the indictment was justified. We agreed with the State and reversed the trial court's judgment. In doing so, we stated as follows:

> [T]his Court finds that the trial court erred when it found that [Perry] was not an "unavailable" witness in 1976 and that New could have been prosecuted and convicted in 1976 using the same evidence that was available to investigators at that time. Accordingly, the trial court erred in finding that the State did not justify the reason for the 35-year delay in indicting New. The State's second assignment of error is sustained.

*New I* at ¶ 26. We also declined to address the State's first assignment of error, which challenged the legal standard that the trial court applied, as moot. *Id*. at ¶ 27. Accordingly, we declared that "[t]he judgment of the Lorain County Court of Common Pleas granting New's motion to dismiss is reversed and the matter is remanded for further proceedings consistent with the foregoing opinion." *Id*. at ¶ 28. New subsequently filed a motion to reconsider with this Court, which we denied by judgment entry.

{¶4} After the matter was remanded, New filed a memorandum asking that the trial court again consider the issue of pre-indictment delay. He contended that our reversal of the trial court's previous judgment on this issue did not foreclose further consideration of it. Rather, New argued that our judgment required the trial court to determine whether the State's reason for the delay outweighed the prejudice to New. The State opposed New's interpretation of our judgment, arguing that we previously considered the balancing of prejudice and justification and that law of the case doctrine precluded further consideration of the issue. The trial court rejected New's interpretation of our previous judgment and found that "[n]o further issues remain with

respect to [New]'s motion to dismiss." New asked that the trial court reconsider this decision, but the trial court also denied that request.[1]

**{¶5}** New also renewed his motion to dismiss the indictment due to the spoliation of evidence, which was originally filed before the first appeal. One basis for this motion was that police failed to keep contact information or other identification records, such as a last name, for a potential witness who was only identified as "Butch." According to a police report exchanged during discovery, Butch told police that he saw New at the Honky Tonk bar on the night of the murder. The trial court denied New's motion to dismiss on the basis of spoliation, reasoning that Butch's potential testimony would merely be cumulative since other alibi witnesses would testify to the same facts. The trial court also found that there was no bad faith in the State's failure to preserve identification information for Butch.

**{¶6}** The matter proceeded to a jury trial after which New was convicted of murder. The trial court subsequently imposed a prison term of 15 years to life. New filed this timely appeal, which presents four assignments of error for our review.

II.

### Assignment of Error I

**The lower court erred and denied the appellant due process of law under the Fourteenth Amendment to the United States Constitution when it failed to conduct the required weighing of prejudice and determine that the appellant's prosecution should be barred due to pre-indictment delay.**

**{¶7}** In his first assignment of error, New attempts to re-litigate the issue of pre-indictment delay, which we previously addressed in *New I*. Because law of the case doctrine

---

[1] New renewed his motion to dismiss for pre-indictment delay a second time on the eve of trial. The trial court again denied the motion on the first day of trial.

precludes further consideration of this issue, we decline to address the merits of New's contention.

{¶8} "The law of the case doctrine 'provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and the reviewing levels.'" *Neiswinter v. Nationwide Mut. Fire Ins. Co.*, 9th Dist. Summit No. 23648, 2008-Ohio-37, ¶ 10, quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3 (1984). Accordingly, "[a]bsent extraordinary circumstances, such as an intervening decision by the Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case." *Nolan* at syllabus; *see also Hubbard ex rel. Creed v. Sauline*, 74 Ohio St.3d 402, 404-405 (1996) (stating that the law of the case doctrine "precludes a litigant from attempting to rely on arguments * * * that were fully pursued, or available to be pursued, in a first appeal. New arguments are subject to issue preclusion, and are barred."). The Supreme Court of Ohio has outlined the basis for this rule as follows:

> [T]he rule is necessary to ensure the consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts.

*Nolan* at 3-4.

{¶9} In *New I*, we explicitly determined that the State's reason for the 35-year delay was justified and, as a result, that the trial court's original judgment granting New's motion to dismiss for pre-indictment delay was reversed. *See New I* at ¶ 28. The trial court had no discretion to vary that mandate. *See Nolan* at syllabus. As a result, we determine, under the law of the case doctrine, that the trial court properly declined New's invitation to reconsider the issue of pre-indictment delay after we remanded the matter.

**{¶10}** Accordingly, we overrule New's first assignment of error.

### Assignment of Error II

**The appellant was denied due process of law and a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution due to spoliation of exculpatory evidence occasioned by pre-indictment delay.**

**{¶11}** In his second assignment of error, New argues that the trial court erred by denying his motion to dismiss the indictment due to the spoliation of materially exculpatory or potentially useful evidence. We disagree.

**{¶12}** Initially, we must outline the contours of our review. On appeal, New frames this assignment of error as implicating pre-indictment delay. However, the motion that he filed in the trial court regarding the spoliation of evidence does not refer to pre-indictment delay. Accordingly, we do not consider this motion within the context of pre-indictment delay, but rather based on concepts of due process and fundamental fairness.

### A. Standard of Review

**{¶13}** A trial court's ruling on a pretrial motion to dismiss a criminal indictment is subject to a mixed standard of review. *See State v. Clemons*, 4th Dist. Highland No. 12CA9, 2013-Ohio-3415, ¶ 6 ("Appellate review of a trial court's decision regarding a motion to dismiss involves a mixed question of law and fact."). "We review a trial court's legal conclusions in ruling on a pretrial motion to dismiss criminal charges de novo." *State v. Wilson*, 10th Dist. Franklin No. 13AP-205, 2013-Ohio-4799, ¶ 4, citing *State v. Saxon*, 9th Dist. Lorain No. 09CA009560, 2009-Ohio-6905, ¶ 5. However, "[w]e accord due deference to the trial court's findings of fact if supported by competent, credible evidence[.]" *Clemons* at ¶ 6.

## B. Spoliation of Evidence in Criminal Cases

{¶14} "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted when the State either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence." *State v. McClain*, 2d Dist. Montgomery No. 26764, 2016-Ohio-838, ¶ 21. Consequently, "the suppression of *exculpatory* evidence that is material to guilt or punishment violates due process without respect to whether the [S]tate acted in bad faith." (Emphasis sic.) *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 48. However, "[w]hen the State fails to preserve evidence that is merely '*potentially useful*,' a defendant must demonstrate that the [S]tate acted in bad faith." (Emphasis added.) *Id*., quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, ¶ 9-10.

{¶15} When considering New's arguments, we are mindful that "[e]vidence is 'materially exculpatory' if it (1) possesses 'an exculpatory value that was apparent before the evidence was destroyed' and (2) is 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *McClain* at ¶ 21, quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984). Conversely, "[p]otentially useful evidence indicates that the evidence may or may not have incriminated the defendant." *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, ¶ 30 (6th Dist.). To properly consider the import of the destruction of potentially useful evidence, we note that "[t]he term 'bad faith' generally implies something more than bad judgment or negligence [and] imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will parking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

(Internal citations and quotations omitted.) *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 81.

{¶16} New challenges the trial court's denial of his spoliation of evidence claim on three bases: (1) that it applied the wrong legal standard; (2) that it erroneously found that Butch's potential testimony was cumulative and not materially exculpatory; and (3) that it erroneously found that the failure to preserve evidence regarding Butch did not reflect bad faith on the State's part. We consider, and reject, each of these bases in turn.

### 1. The Trial Court Applied the Correct Legal Standard.

{¶17} The trial court's judgment entry denying New's spoliation of evidence claim reflects that it properly applied the legal standard for such claims in criminal cases. The trial court correctly noted that the destruction of materially exculpatory evidence results in a denial of due process regardless of the existence of bad faith and that the destruction of potentially useful evidence only results in such a denial where the defendant proves bad faith. This standard is entirely consistent with the mandates handed down by the United States Supreme Court and the Supreme Court of Ohio and neither the trial court nor this Court can alter those mandates. *See McClain*, 2016-Ohio-838, at ¶ 25 (rejecting the defendant's argument to apply different standard to spoliation of evidence claim because the court "lack[ed] the authority to alter the burden of proof mandated by the Ohio Supreme Court and United States Supreme Court precedent"). Consequently, we conclude that the trial court did not apply the wrong legal standard to New's spoliation claim.

### 2. Butch's Testimony Was Not "Materially Exculpatory."

{¶18} The trial court found that Butch's potential testimony was not materially exculpatory on the basis that there was other comparable and reasonably available evidence. In

doing so, the trial court identified two other witnesses, Linda Fair and Patricia Lambert, who could offer testimony that was similar to Butch's potential testimony. After review of the record, we conclude that the trial court did not err in this determination.

{¶19} Mrs. Fair, a patron, and Mrs. Lambert, the bartender, were both at the Honky Tonk bar on the night of the murder into the early morning hours of the next day. A police report reflects that Mrs. Fair stated to police that she saw New at the bar on the night of the murder but was uncertain of the exact time. Butch's statement to police was nearly identical to Mrs. Fair's statement. While there was no identifying information for Butch, Mrs. Fair's full name and work address were provided in the police report.

{¶20} After the indictment was issued in this matter, Mrs. Lambert learned of the situation and contacted one of New's attorneys regarding the night of the murder. She subsequently subjected herself to a videotaped deposition during which she testified that she saw New come into the Honky Tonk bar sometime between 11:00 p.m. and midnight. She also said that New stayed at the bar until closing time, which was approximately 2:45 a.m., and then went to get breakfast with her and two other bar patrons.

{¶21} In light of Mrs. Fair's statement to police and Mrs. Lambert's deposition testimony, the trial court did not err in determining that Butch's potential testimony was cumulative. Mrs. Fair, Mrs. Lambert, and Butch could all testify to similar facts regarding the night of the murder – namely, that New was seen at the Honky Tonk bar. And, since Mrs. Fair's full name and work address were made available, as well as Mrs. Lambert's deposition testimony, the trial court did not err in determining that comparable evidence to Butch's potential testimony was reasonably available. As a result, we determine that the trial court properly found that Butch's potential testimony was not "materially exculpatory." *See State v. Purdon*, 24 Ohio

App.3d 217, 219 (12th Dist.1985) (determining that the defendant was able to obtain comparable evidence by other reasonably available means because he could have had obtained a different blood alcohol test and challenged the testing procedures used by the State).

### 3. New Did Not Establish Bad Faith.

**{¶22}** Our conclusion on this point does not end our inquiry. Even if not materially exculpatory, Butch's potential testimony was "potentially useful" as it did support New's alibi defense. *See Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, at ¶ 31 (determining that destroyed videotape was potentially useful because it "may have supported appellant's version of his actions"). As a result, New had the burden to establish that the State's failure to preserve information relating to Butch was done in bad faith. *See Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, at ¶ 77.

**{¶23}** On appeal, New argues that the trial court erred in finding no bad faith on the State's part because "[i]t is hard to imagine that an officer investigating a suspect would receive information of an alibi and not bother recording that witness's information absent bad faith." New fails to cite to any relevant legal authority supporting this speculative position. *See* App.R. 16(A)(7). Rather than further develop his argument, New asks that we infer the existence of bad faith merely on the basis that Butch's information was not preserved. We decline to do so and determine that the trial court did not err in finding that New failed to establish the existence of bad faith. *See State v. Franklin*, 2d Dist. Montgomery No. 19041, 2002-Ohio-2370, ¶ 48 (determining that the defendant failed to present sufficient evidence of bad faith in the State's destruction of the crime scene because the "lack of a credible explanation" for the scene's destruction was only evidence of "bad judgment or negligence," not a due process violation); *see also State v. Smith*, 2d Dist. Montgomery No. 20247, 2005-Ohio-1374, ¶ 12 ("The [S]tate has no

duty to gather exculpatory evidence."). We also note that the police report does not omit *all* information regarding a potential alibi defense. Indeed, the report refers to Mrs. Fair's statement, as well as her full name and contact information. The inclusion of such information cuts against New's position that the exclusion of more complete information regarding Butch was done out of bad faith in an attempt to prevent the discovery of exculpatory evidence.

{¶24} In sum, we determine that the trial court did not err by denying New's motion to dismiss the indictment due to the spoliation of evidence. Accordingly, we overrule New's second assignment of error.

### Assignment of Error III

**The appellant was denied due process of law as the verdict and judgment were based upon legally insufficient evidence.**

{¶25} In his third assignment of error, New asserts that the State failed to present sufficient evidence to support his murder conviction. Specifically, he contends that there is insufficient evidence in the record to support a finding that New acted purposely when he shot Ms. Spencer. We disagree.

{¶26} A sufficiency challenge to a criminal conviction presents a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In carrying out this review, our "function * * * is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. After such an examination and taking the evidence in the light most favorable to the State, we must decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. Although we conduct de novo review when considering a sufficiency challenge, we "'neither resolve evidentiary conflicts nor assess the credibility of

witnesses, as both are functions reserved for the trier of fact.'" *State v. Jarvis*, 9th Dist. Lorain No. 14CA010667, 2015-Ohio-4219, ¶ 10, quoting *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120571, 2013-Ohio-4775, ¶ 33.

{¶27} R.C. 2903.02(A) relevantly states that "[n]o person shall purposely cause the death of another[.]" The Revised Code provides that "[a] person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against certain conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." Former R.C. 2901.22(A).[2] When assessing the evidence regarding New's mental state in this matter, we note the following:

> Intent need not be proven by direct testimony. The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. Further, the act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence.

(Internal citations and quotations omitted.) *State v. Elwell*, 9th Dist. Lorain No. 06CA008923, 2007-Ohio-3122, ¶ 26.

{¶28} Here, Perry testified that around 2:00 a.m. on March 14, 1976, he went into the living room of his house where he found his parents as well as New. Perry disregarded his parents' instructions to go back to his bedroom and instead asked what was wrong. At that time, New said that he had gotten into an argument with Ms. Spencer, "smacked her," and then "shot her." Ms. Spencer was discovered around that time at her trailer with a gunshot wound to her

---

[2] S.B. 361, effective March 23, 2015, amended the wording of this provision. Because this matter predates S.B. 361's effective date, we apply the former version of R.C. 2901.22(A). Nevertheless, we note that the amendment to the provision's definition of "purposely" did not alter the substance of the provision.

head, which the Coroner concluded was the cause of her death. Police subsequently matched the shell casing found at the scene to the type of gun that New had previously borrowed from one of his friends. Taking this evidence in a light most favorable to the State, we conclude that it offered sufficient evidence to prove that New purposely shot Ms. Spencer in her head, which caused her death. *See State v. Marshall*, 175 Ohio App.3d 488, 2008-Ohio-955, ¶ 49 (1st Dist.) (determining that there was sufficient evidence to support finding that defendant acted purposely when killing the victim because evidence demonstrated that the defendant shot the victim in the head).

{¶29} Accordingly, we overrule New's third assignment of error.

### Assignment of Error IV

**The appellant was denied effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.**

{¶30} In his fourth assignment of error, New claims that he received ineffective assistance of counsel because his trial counsel failed to request a jury instruction for the lesser-included offense of involuntary manslaughter. We disagree.

{¶31} To establish ineffective assistance of trial counsel, a defendant must show that his trial counsel's performance was deficient and that the deficient performance affected the outcome of trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Trial counsel's performance is deficient only where it falls "below an objective standard of reasonable representation." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. In assessing trial counsel's performance, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689, citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). This Court has previously noted that "'[i]n Ohio, there is a presumption that the failure to request an instruction on an lesser-included

offense constitutes a matter of trial strategy[.]'" *State v. Burks*, 9th Dist. Summit No. 27423, 2015-Ohio-1246, ¶ 7, quoting *State v. Hernon*, 9th Dist. Medina No. 3081-M, 2001 WL 276348, *4 (Mar. 21, 2002). Here, New has not identified anything in the record to show that his trial counsel's failure to request an involuntary manslaughter instruction "was anything other than a tactical election to seek an acquittal rather than a conviction on the lesser-included offense." *State v. DuBois*, 9th Dist. Summit No. 21284, 2003-Ohio-2633, ¶ 6. Consequently, we conclude that New has failed to establish that his trial counsel was deficient and that he received ineffective assistance of counsel. *See Burks* at ¶ 7.

{¶32} Accordingly, we overrule New's fourth assignment of error.

III.

{¶33} Having overruled all of New's assignments of error, we affirm the judgment of the Lorain County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, J.
CONCURS IN JUDGMENT ONLY.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶34} I would overrule the second assignment of error regarding the spoliation of evidence based on the law of the case doctrine, as all of these issues relate to alleged prejudice from preindictment delay.

APPEARANCES:

ROBERT A. DIXON, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA GUERRIERI, Assistant Prosecuting Attorney, for Appellee.