[Cite as *State v. Jackson*, 2018-Ohio-19.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

ANDREW JACKSON III

    Appellant

C.A. No.    28625

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2016-01-0318

DECISION AND JOURNAL ENTRY

Dated: January 3, 2018

TEODOSIO, Judge.

{¶1}    Defendant-Appellant, Andrew Jackson III, appeals from the judgment of the Summit County Court of Common Pleas, denying his motion to suppress. This Court affirms.

I.

{¶2}    During his shift, Ohio State Highway Patrol Sergeant Neil Laughlin received a tip about Mr. Jackson from the Summit County Drug Unit. He was advised that Mr. Jackson might be traveling to Akron that day and might be transporting narcotics. The Drug Unit provided him with a description of Mr. Jackson's car and asked him to be on the lookout. Sergeant Laughlin shared the information he received with Sergeant Michael Trader, his partner that day.

{¶3}    While observing eastbound traffic on Interstate 76, Sergeant Laughlin spotted Mr. Jackson's car. He clocked the car speeding and also saw it swerve into the other lane without signaling. Because he took interest in a second car directly behind Mr. Jackson's car, however, he decided to relay his observations to Sergeant Trader. Sergeant Laughlin then pursued the

second car while Sergeant Trader pursued Mr. Jackson. At the time, Sergeant Trader was already traveling eastbound on Interstate 76.

{¶4} Sergeant Trader soon spotted Mr. Jackson and noted that he was speeding. Consequently, he stopped Mr. Jackson, approached his car, and asked for his license and registration. Mr. Jackson was unable to produce his registration and appeared nervous, so Sergeant Trader placed him in the back of his cruiser. While waiting for information from dispatch, Sergeant Trader led his canine around Mr. Jackson's car. The canine alerted at the driver's door and a search ensued. The police ultimately found a baggie of marijuana between the center console and driver's seat, a digital scale inside the center console, and a loaded gun in the glove box.

{¶5} A grand jury indicted Mr. Jackson on charges of having a weapon under disability, carrying a concealed weapon, possession of marijuana, and illegal use of marijuana drug paraphernalia. Mr. Jackson filed a motion to suppress, and the court set the matter for hearing. At the hearing, Mr. Jackson learned for the first time that Sergeant Laughlin had received a tip about him from the Summit County Drug Unit. Because the State had failed to disclose that information during discovery, Mr. Jackson made an oral motion to dismiss the case. Likewise, he orally moved to dismiss the case because neither Sergeant Laughlin, nor Sergeant Trader had preserved their dash cam recordings from the day of the stop. At the conclusion of the hearing, the court took the matter under advisement.

{¶6} Subsequently, the court denied Mr. Jackson's motion to suppress, and he entered into a negotiated plea. The court accepted his plea, merged his weapons counts, and sentenced him to one year in prison on the weapon under disability count. As to his two remaining counts, both of which were minor misdemeanors, the court waived fines without first imposing them.

{¶7} Mr. Jackson now appeals from the court's judgment and raises two assignments of error for our review.

II.

{¶8} Before turning to the merits of Mr. Jackson's assignments of error, this Court pauses to address its jurisdiction. *See* Ohio Constitution, Article IV, Section 3(B)(2) (appellate court jurisdiction limited to reviewing final orders of lower courts). The State has moved this Court, in accordance with our prior decisions, to dismiss the appeal due to the trial court's decision to waive the fines on Mr. Jackson's minor misdemeanors. The State argues that the court first had to impose fines on those counts before waiving them. Because the court did not do so, the State argues that it neglected to sentence Mr. Jackson on his minor misdemeanor counts and, consequently, issued a non-final order.

{¶9} Admittedly, this Court previously has dismissed appeals for the reasons outlined by the State. *See, e.g., State v. Rice*, 9th Dist. Summit Nos. 27386 & 27551, 2016-Ohio-8443, ¶ 9 (appeal dismissed where court waived fine on minor misdemeanor); *State v. Goodwin*, 9th Dist. Summit No. 23337, 2007-Ohio-2343, ¶ 1-2 (appeal dismissed where court ordered that no costs or fines be imposed on minor misdemeanors). Further reflection now compels us to conclude, however, that those opinions were wrongly decided and that, in practical application, they defy workability. *See Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, paragraph one of the syllabus. Because abandoning the finality precedent set forth in those cases will not result in undue hardship, *see id.*, this Court now overrules those decisions to the extent that they are inconsistent with the following discussion.

{¶10} For a judgment of conviction to be final and appealable, it must set forth "(1) the fact of the conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp

indicating the entry upon the journal by the clerk." *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, paragraph one of the syllabus. A sentence is "the sanction or combination of sanctions imposed by the sentencing court * * *." R.C. 2929.01(EE). A sanction is "any penalty imposed upon an offender * * * as punishment for the offense." R.C. 2929.01(DD). The Ohio Supreme Court recently reiterated that "a valid judgment of conviction requires a full resolution of any counts for which there were convictions." *State v. Jackson*, Slip Opinion No. 2017-Ohio-7469, ¶ 11. Thus, the question is whether the trial court sentenced Mr. Jackson in a manner that fully resolved his minor misdemeanor counts when it waived the fines on those counts without first imposing any specific fines. We conclude that the trial court did so.

{¶11} Minor misdemeanors are unique in that they can never result in the imposition of a jail sentence. *See* R.C. 2901.02(G). *Compare* R.C. 2929.24(A) (outlining definite jail terms a court shall impose if it elects or is required to impose a jail term for misdemeanor offenses of a specific degree). For that very reason, defendants charged strictly with minor misdemeanor have no right to a jury trial. *State v. Kearns*, 9th Dist. Medina No. 06CA0020-M, 2006-Ohio-5811, ¶ 16, citing R.C. 2945.17(B)(1). Though a trial court may select from several different penalties when sentencing on minor misdemeanors, none of those penalties are mandatory in nature. *Compare* R.C. 2929.14(A)(1)-(5) (outlining lengths of prison terms a court shall impose if it elects or is required to impose a prison term for a felony offense). Rather, the court, in its discretion, *may* impose a fine not exceeding $150, *may* impose a separate financial sanction, or, in lieu of the fine, *may* impose a term of community service not exceeding thirty hours. *See* R.C. 2901.02(G)(2), 2929.27(D), and 2929.28(A). Forcing a trial court to impose a fine on a minor misdemeanor before waiving it, essentially grafts a mandatory requirement onto the sentencing statutes where none exists.

**{¶12}** This Court has recognized that trial courts have "a mandatory duty 'to deal with each and every charge prosecuted against the defendant[,]'" and lack the authority "to refuse to impose sentence altogether." *State v. Ford*, 9th Dist. Summit No. 23269, 2006-Ohio-6961, ¶ 6, quoting *State v. Hayes*, 9th Dist. Lorain No. 99CA007416, 2000 Ohio App. LEXIS 2198, *4 (May 24, 2000). Had the trial court here neglected to address Mr. Jackson's minor misdemeanors or expressly refused to sentence him on those counts, its order would have run contrary to Crim.R. 32(C). *See, e.g., State v. Martin*, 9th Dist. Wayne No. 06CA0069, 2007-Ohio-5764, ¶ 11; *Ford* at ¶ 6. In those instances, Mr. Jackson would not have been put on notice that a final judgment had been entered against him such that he would have known to file his appeal. *See Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, ¶ 10 (discussing the purpose behind Crim.R. 32(C)). The same result cannot control, however, when a trial court evidently considers a minor misdemeanor count and chooses, in its sound discretion, to waive the fine on that count.[1] In those instances, the sentence essentially equates to a fine of zero dollars, and the court has fully resolved the count. *See Jackson*, 2017-Ohio-7469, at ¶ 11. Requiring the court to actually write "$0" or some other arbitrary amount before waiving a fine is an exercise in academia that defies practical workability. *See Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, at paragraph one of the syllabus. As such, to the extent this Court has required that practice in the past, we now depart from those prior decisions.

---

[1] This Court takes no position on whether a trial court commits error when waiving a fine of an undetermined amount on a minor misdemeanor. Neither the State, nor Mr. Jackson has raised that issue as an assignment of error on appeal. The issue before this Court is strictly whether a fine waiver affects finality.

{¶13} To summarize, when imposing a sentence on a minor misdemeanor, a trial court is not required to impose a fine of a specific dollar amount before waiving the fine. So long as it is evident that the court considered the minor misdemeanor count and fully resolved it by imposing a sentence, the judgment on that count will satisfy Crim.R. 32(C). In imposing the sentence, the court may impose a fine of a specific numerical value (up to $150), may impose the same and waive the fine, or may implicitly impose a fine of $0 by simply waiving the fine. *See* R.C. 2901.02(G)(2) and 2929.28(A)(2)(a)(v). Additionally, the court may choose to impose community service in lieu of a fine and may impose a separate financial sanction. *See* R.C. 2929.27(D) and 2929.28(A). Because the trial court here wrote in its judgment entry that it was waiving the fines on Mr. Jackson's two minor misdemeanors, the record reflects that the court evidently considered those counts and imposed a sentence for purposes of Crim.R. 32(C). Consequently, the State's motion to dismiss the appeal is denied.

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS ALL EVIDENCE AND STATEMENTS OBTAINED IN VIOLATION OF APPELLANT JACKSON'S FOURTH, FIFTH AND SIXTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS TEN AND FOURTEEN OF THE OHIO CONSTITUTION.

{¶14} In his first assignment of error, Mr. Jackson argues that the trial court erred when it denied his motion to suppress. Specifically, he argues that Sergeant Trader lacked reasonable suspicion to stop his car. We do not agree.

{¶15} A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio

St.3d 357, 366 (1992). Thus, a reviewing court gives deference to and "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706, 710 (4th Dist.1997).

{¶16} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution proscribe unreasonable searches and seizures. To justify an investigative stop, an officer must point to "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as "'viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976). "[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question." *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12 (1996). *Accord State v. Barbee*, 9th Dist. Lorain No. 07CA009183, 2008-Ohio-3587, ¶ 9, quoting *State v. Hunt*, 9th Dist. Lorain No. 94CA005795, 1994 Ohio App. LEXIS 5548, *5 (Dec. 7, 1994) ("'[A] traffic stop will not be pretextual if the officer had specific and articulable reasons to believe the driver was violating the law.'").

{¶17} The trial court found that the police stopped Mr. Jackson's car based on his having committed at least one traffic violation. Specifically, the police observed him speeding and also swerving into a different lane without signaling. Because the police had probable cause to believe Mr. Jackson had violated traffic laws, the court concluded that the traffic stop was constitutionally valid. Consequently, it denied Mr. Jackson's motion to suppress to the extent that the motion challenged his initial stop.

{¶18} Mr. Jackson argues that the court erred by denying his motion to suppress because the traffic violations the police allegedly saw were "merely a pretext to conduct a warrantless search of the vehicle * * *." He notes that Sergeant Laughlin and Sergeant Trader admitted they had received a tip about him earlier in the day such that they had a motive to stop him. He further notes that he was never actually cited for a traffic violation and that neither officer was able to produce a dash cam recording, depicting his violations or the traffic stop. According to Mr. Jackson, "[t]here [was] no evidence to support the alleged traffic violations and the evidence that would have refuted them was either not created or [] not retained."

{¶19} Sergeant Laughlin readily admitted that he received a tip about Mr. Jackson and a description of his car before spotting it traveling eastbound on Interstate 76. He maintained, however, that, had he not observed a traffic violation, he would have allowed Mr. Jackson to continue driving because he otherwise lacked reasonable suspicion or probable cause to stop him. Sergeant Laughlin clocked Mr. Jackson with his laser and noted that he was traveling 76 miles per hour in a 65 mile-per-hour zone. As he continued to watch Mr. Jackson, he then saw his car "nosedive, which is indicative of hitting the brakes, and * * * swerve[] over pretty rapidly in the right-hand lane" without signaling. Sergeant Laughlin testified that he shared his

observations with his partner, Sergeant Trader, because he took interest in a second car that seemed to be following Mr. Jackson.

{¶20} While Sergeant Trader pursued Mr. Jackson, Sergeant Laughlin pursued the second car. Sergeant Laughlin testified that he did not have a dash cam recording to support his testimony because he was not the officer who stopped Mr. Jackson. By the time he joined Sergeant Trader, Sergeant Trader had already stopped Mr. Jackson and led his canine around Mr. Jackson's car. Sergeant Laughlin stated that he never cited Mr. Jackson for the traffic violations he observed because it is not his policy to cite individuals for minor traffic infractions when a stop gives rise to felony charges.

{¶21} Sergeant Trader confirmed that he began following Mr. Jackson after Sergeant Laughlin relayed information about the foregoing traffic violations. He testified that he reached Mr. Jackson as he was driving through a 50 mile-per-hour zone and saw him traveling in excess of 60 miles per hour. Based on the prior violations Sergeant Laughlin had observed and the separate speeding violation he saw, Sergeant Trader stopped Mr. Jackson's car.

{¶22} Sergeant Trader acknowledged that he ultimately chose not to cite Mr. Jackson for a traffic violation. Much like Sergeant Laughlin, he testified that it is not his practice to do so when felony charges arise as the result of a traffic stop. As to his dash cam recording, Sergeant Trader testified that he uploaded the recordings from his cruiser that day, but a cruiser malfunction may have caused the specific recording of Mr. Jackson's stop to be unavailable. He testified that his cruiser broke down right after the stop and had to be towed from the scene. His cruiser then remained at a car dealership for several days before he was told it had just run out of gasoline.

{¶23} Having reviewed the record, this Court must conclude that the trial court's factual findings are based on competent, credible evidence. *See Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, at ¶ 8. Both Sergeant Laughlin and Sergeant Trader testified that they saw Mr. Jackson speeding while he was traveling on Interstate 76. Additionally, Sergeant Laughlin testified that he saw Mr. Jackson swerve into another lane without signaling. Though neither officer cited Mr. Jackson for the traffic violations they observed, both explained that it is not their practice to do so when felony charges arise as a result of a traffic stop. Moreover, to the extent neither officer could rely on dash cam recordings to support their testimony, the trial court was in the best position to hear their testimony, view their demeanors, and evaluate their credibility. *Id.* This Court, therefore, accepts the trial court's factual findings as true and applies the law to those facts. *Id.*

{¶24} As previously noted, a traffic stop is constitutionally valid so long as an officer had either reasonable suspicion or probable cause to believe that an individual committed a minor traffic violation. *Erickson*, 76 Ohio St.3d at 11-12. Because both Sergeant Laughlin and Sergeant Trader saw Mr. Jackson speeding, both officers had probable cause to stop him. *See id.* The fact that they also had received a tip about Mr. Jackson is irrelevant, given that the stop occurred as a result of the traffic violations. *See id. Accord State v. Murphy*, 159 Ohio App.3d 74, 2004-Ohio-5817, ¶ 10 (9th Dist.) ("The subjective motivation of an officer in no way invalidates behavior which is otherwise objectively justified under the Fourth Amendment."). Upon review, the trial court did not err when it denied Mr. Jackson's motion to suppress. His first assignment of error is overruled.

**ASSIGNMENT OF ERROR TWO**

THE TRIAL COURT ERRED WHEN IT FAILED TO DISMISS THE CHARGES AGAINST APPELLANT BASED ON THE STATE'S "BAD

FAITH" FAILURE TO PRESERVE THE DASH CAM EVIDENCE OF THE TRAFFIC STOP AND SUBSEQUENT WARRANTLESS SEARCH OF APPELLANT'S VEHICLE.

{¶25} In his second assignment of error, Mr. Jackson argues that the trial court erred by denying his motion to dismiss his charges. Specifically, he argues that his charges ought to have been dismissed because the State failed to preserve the dash cam recordings from his traffic stop and the subsequent warrantless search of his car. We disagree.

{¶26} Initially, we note that the trial court never expressly ruled on Mr. Jackson's motion to dismiss. Mr. Jackson orally moved to dismiss this case at the conclusion of the suppression hearing based on the State's failure to preserve and produce the dash cam recordings. Though the court later denied his motion to suppress, it did not address his motion to dismiss in its ruling. This Court, therefore, presumes that the motion was denied. *See State v. Jackson*, 9th Dist. Summit Nos. 24463 & 24501, 2009-Ohio-4336, ¶ 14. "We review the trial court's decision on a pre-trial motion to dismiss de novo." *State v. Franchi*, 9th Dist. Summit No. 27797, 2016-Ohio-1195, ¶ 5.

{¶27} "[T]he suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the [S]tate acted in good or bad faith." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, ¶ 7, citing *State v. Johnston*, 39 Ohio St.3d 48, 60 (1988). If, however, the State fails to preserve "potentially useful" evidence, a defendant must show that the State acted in bad faith. *Geeslin* at syllabus. *Accord State v. Franchi*, 9th Dist. Summit No. 27797, 2016-Ohio-1195, ¶ 6. Material evidence is that which goes to "the *substance* of the allegations against [a defendant]." (Emphasis sic.) *Geeslin* at ¶ 13. In other words, it is evidence the defendant would have used to acquit himself of the specific charges levied against him. *Id. Accord State v. Nastick*, 9th Dist. Summit No. 28243, 2017-Ohio-5626, ¶ 9, quoting

*State v. Whalen*, 9th Dist. Lorain No. 08CA009317, 2008-Ohio-6739, ¶ 8 ("Exculpatory evidence * * * is defined as 'evidence favorable to the accused which, if disclosed and used effectively, * * * may make the difference between conviction and an acquittal.'"). Potentially useful evidence is "evidence of limited exculpatory value" that does not bear directly upon an accused's guilt or innocence. *State v. Rice*, 9th Dist. Summit No. 26116, 2012-Ohio-2174, ¶ 15. "Generally, the defendant bears the burden of proving that evidence was materially exculpatory." *Nastick* at ¶ 11. If a defendant makes a specific request for a particular piece of evidence and that evidence is later lost or destroyed, however, "'the burden shifts to the [S]tate to show that the evidence was not material.'" *Id.*, quoting *State v. Glunt*, 10th Dist. Franklin No. 09AP-962, 2010-Ohio-3024, ¶ 10.

**{¶28}** It is undisputed that the State failed to provide Mr. Jackson with dash cam recordings from Sergeant Laughlin's and Sergeant Trader's cruisers. Mr. Jackson argues that the recordings were critical because they documented the probable cause for his stop and the probable cause for the search of his car. It is not clear from the record that he requested the preservation of the recordings before they were either destroyed or lost. *See Nastick* at ¶ 11. Even assuming he did, however, the record reflects that the missing recordings were not materially exculpatory. *See id.* There is no evidence in the record to suggest that the recordings would have contradicted Sergeant Laughlin's and Sergeant Trader's testimony. *See id.* at ¶ 16. More importantly, Mr. Jackson never claimed that the recordings would have helped acquit him on any of his charges. *See Geeslin* at ¶ 13; *Franchi* at ¶ 7. That is, he never claimed that the recordings would have helped show that he did not possess a loaded gun, marijuana, or marijuana paraphernalia. Instead, he argued that he could have used the recordings to challenge the validity of his traffic stop and the subsequent search that occurred. Because the recordings

only would have been used to challenge the validity of the stop and search that led to his arrest, we must conclude that they "could not have been materially exculpatory evidence * * * but [were] instead potentially useful evidence." *Geeslin* at ¶ 13. *Accord Franchi* at ¶ 7-8. As such, it was Mr. Jackson's burden to prove that the State acted in bad faith when it failed to preserve the recordings. *Geeslin* at syllabus; *Nastick* at ¶ 19.

{¶29} "'The term "bad faith" generally implies something more than bad judgment or negligence.'" *Nastick* at ¶ 19, quoting *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 81. "[I]t 'imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'" *State v. Dunn*, 9th Dist. Wayne No. 03CA0037, 2004-Ohio-2249, ¶ 63, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983).

{¶30} This Court cannot conclude that Mr. Jackson demonstrated bad faith by the State in failing to preserve the dash cam recordings. *See Geeslin* at syllabus; *Nastick* at ¶ 19. There was testimony that, after they are uploaded, dash cam recordings automatically delete after thirty days unless specifically tagged for preservation. Sergeant Laughlin explained that he did not preserve his recording from that day because he did not pursue Mr. Jackson and was not present when Sergeant Trader stopped him or led his canine around his car. He testified that he clocked Mr. Jackson with his laser from a stationary position, so it is entirely unclear whether his dash cam recording would have captured Mr. Jackson's initial approach. Even if it did, however, Mr. Jackson has not shown that Sergeant Laughlin possessed an ulterior motive or intent to deceive when he failed to preserve his recording. *See Dunn* at ¶ 63, quoting *Hoskins* at 276. *See also*

*State v. New*, 9th Dist. Lorain No. 15CA010754, 2016-Ohio-7730, ¶ 23. Bad faith amounts to more than bad judgment or simple negligence. *See Nastick* at ¶ 19, quoting *Powell* at ¶ 81.

**{¶31}** As for Sergeant Trader, he testified that he uploaded the recordings from his dash cam that day, but that a cruiser malfunction may have caused the specific recording taken of Mr. Jackson's stop to be unavailable. He testified that his cruiser broke down right after the stop and had to be towed from the scene. It then remained at a car dealership for several days before he was told it had just run out of gasoline. He stated: "The thing died; I thought it blew up. * * * [T]hey said it was just out of gas. I don't know." Sergeant Trader testified that he uploaded all of his recordings in a timely fashion, but Mr. Jackson's recording was not available. The only explanation he had for its unavailability was that his cruiser had malfunctioned.

**{¶32}** Assuming that the actual cause of Sergeant Trader's cruiser malfunction was a lack of gasoline, we still cannot conclude that his failure to properly maintain his cruiser amounted to anything more than negligence or bad judgment. *See Nastick* at ¶ 19, quoting *Powell* at ¶ 81. Sergeant Trader clearly testified that he uploaded all of the available content from his dash cam that day, but the recording of Mr. Jackson was simply unavailable. There was no evidence that he intentionally caused the recording to be unavailable or that he possessed an ulterior or dishonest motive when he neglected to fill his cruiser with gasoline. *See Dunn* at ¶ 63, quoting *Hoskins* at 276. *See also State v. Moultry*, 9th Dist. Summit No. 25065, 2010-Ohio-3010, ¶ 12. At best, his conduct demonstrated a lack of care, not bad faith. Consequently, we cannot conclude that the trial court erred when it denied Mr. Jackson's motion to dismiss. Mr. Jackson's second assignment of error is overruled.

III.

**{¶33}** Mr. Jackson's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

DONALD R. HICKS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.