[Cite as *State v. Ohara*, 2014-Ohio-5532.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27342 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| THOMAS M. OHARA | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2013 07 1919 |

DECISION AND JOURNAL ENTRY

Dated: December 17, 2014

WHITMORE, Judge.

{¶1} Defendant-Appellant, Thomas Ohara, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} On July 14, 2013, two Akron Police Department officers responded to an apartment on North Rose Boulevard after a neighbor reported having heard loud noises coming from the apartment. When the officers arrived, the apartment door was ajar and they heard moaning coming from inside. They knocked on the door and were greeted by a dog, who nudged the door open. The officers then observed items strewn about the apartment and a man lying on the floor. After entering the apartment to aid the man, the officers observed a white substance, paper tube, and rolled up dollar bill on the coffee table next to the man. They further observed white residue on the man's nostrils. When they were finally able to sufficiently rouse the man, he admitted that he had snorted "meth." One officer field tested the white substance on

the table for methamphetamine and tagged it into evidence as such, along with the paper tube and rolled up dollar bill. The man that the officers found in the apartment was later identified as Ohara.

{¶3}   A grand jury indicted Ohara on one count of aggravated possession of methamphetamine. After forensic testing determined that the substance the police seized from Ohara's apartment was actually methoxetamine, the grand jury issued a supplemental indictment, charging Ohara with aggravated possession of methoxetamine. The court then dismissed the count of aggravated possession of methamphetamine at the request of the prosecutor.

{¶4}   The matter proceeded to a bench trial and, at the conclusion of trial, the court found Ohara guilty of aggravated possession of methoxetamine. The court sentenced Ohara to 18 months of community control.

{¶5}   Ohara now appeals and raises one assignment of error for our review.

II

Assignment of Error

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT
OF THE EVIDENCE.

{¶6}   In his sole assignment of error, Ohara argues that his conviction is against the weight of the evidence. He argues that, because the State failed to establish an unbroken chain of custody between the time of collecting and the time of testing the white substance the police found in his apartment, the trier of fact lost its way in choosing to believe that he possessed methoxetamine. We do not agree that Ohara's conviction is against the weight of the evidence.

{¶7}   In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶8} Evid.R. 901(A) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This Court has previously stated that chain of custody relates to the authentication or identification process set forth in Evid.R. 901(A). *State v. Meyers*, 9th Dist. Summit Nos. 23864 & 23903, 2008-Ohio-2528, ¶ 49. Given the authentication requirement in Evid.R. 901(A) as a condition precedent to admissibility, the prosecution bears the burden of establishing a proper chain of custody. However, if the evidence is properly admissible under Evid.R. 901(A), "[t]he state need not negate all possibilities of tampering or substitution; instead, the state need only establish that it is reasonably certain that substitution, alteration, or tampering did not occur." *State v. Hickman*, 9th Dist. Summit No. 20883, 2002-Ohio-3406, ¶ 20. Thus, "[a] break in the chain of custody, if any, goes to the

weight or credibility of the evidence, and not its admissibility." *State v. Wingate*, 9th Dist. Summit No. 26433, 2013-Ohio-2079, ¶ 27, quoting *Meyers* at ¶ 49. *See also State v. Brown*, 9th Dist. Summit No. 14243, 1990 WL 2929, *3 (Jan. 17, 1990) ("The issue of chain of custody involves the weight given by the jury to the testimony, which allows the inference that the cocaine allegedly obtained from defendant was the cocaine analyzed by the Ohio Bureau of Criminal Identification and Investigation [] and presented at trial, and not its sufficiency as a matter of law.").

{¶9} Officer Jeffrey Lamm testified that he and his partner responded to a call about a disturbance at a four-unit apartment building in Akron. Specifically, a neighbor had called about loud noises, including the sound of furniture breaking. As Officer Lamm approached the apartment's door, he noticed that the door was ajar. He indicated that he could hear a low moaning noise coming from inside. He testified that, when he and his partner knocked on the door, a dog came to the door and nudged it open the rest of the way. Officer Lamm was then able to see a man lying on the floor and stated that the man looked to be "having a seizure or something like that." The two officers called for an ambulance and entered the apartment to help the man. Officer Lamm identified Ohara as the man he saw lying on the floor.

{¶10} Officer Lamm testified that, directly after he entered the apartment, he saw that it was in disarray and that the television had been knocked over. As he and his partner tried to communicate with Ohara, Officer Lamm saw white powder, a paper tube, and a rolled up dollar bill on the coffee table. He also observed a white residue around Ohara's nostrils. Officer Lamm testified that Ohara was drooling, speaking unintelligibly, and seemed to be slipping in and out of consciousness. He testified that, after the paramedics aided Ohara, his partner field tested the white residue on the table and they collected it as evidence. Officer Lamm specified

that suspected controlled substances collected by the Akron Police Department are submitted to the Bureau of Criminal Identification and Investigation ("BCI") to confirm the initial test that the officers performed in the field. Officer Lamm identified State's Exhibit 1 as the white substance that he collected from Ohara's apartment. He further identified State's Exhibits 2 and 3 as the paper tube and rolled up dollar bill that he and his partner found on the coffee table alongside the white substance.

{¶11} Officer Drew Reed testified that he responded to Ohara's apartment along with his partner, Officer Lamm. Officer Reed likewise testified that the apartment door was slightly open when they arrived and that, after they knocked on the door, a dog came to the door and nudged it open. Once the door was open, Officer Reed observed "stuff knocked over everywhere" and a man lying on the ground "kind of moaning." He and his partner then contacted the paramedics and entered the apartment to aid Ohara. Officer Reed testified that Ohara had a white substance on his nose and that, right beside him, there was a table with a white substance and rolled up dollar bill on it. Although Ohara was initially "in and out of consciousness and moaning," Officer Reed testified that he was eventually able to ask Ohara if he "was using meth." According to Officer Reed, Ohara admitted that he had snorted the drug.

{¶12} After the paramedics aided Ohara, Officer Reed field tested the white substance on the table for methamphetamine and ultimately tagged it into evidence as such. He identified State's Exhibit 1 as the white residue that he and Officer Lamm collected from Ohara's apartment. He also identified State's Exhibits 2 and 3 as the paper tube and rolled up dollar bill that he and Officer Lamm found on the coffee table alongside the white substance.

{¶13} Robert Michael Velten, an assistant laboratory director with BCI, testified that he received State's Exhibit 1 for testing and used a gas chromatograph mass spectrometer to

confirm that the substance was methoxetamine. Velten testified that, when the Akron Police Department finds a potential controlled substance that it would like analyzed, a narcotics secretary at BCI receives the evidence and logs it into a vault where it remains until he retrieves it. Velten then retrieves the evidence and, using the unique identifiable number BCI has given it, logs it into his laboratory, where it remains until his analysis is complete. Upon the completion of his analysis, Velten testified that he types a written report about the item and places it back into the vault where it is later retrieved by either an Akron narcotics detective or the detective's secretary.

{¶14} On cross-examination, Velten admitted that he was not familiar with the Akron Police Department's procedure for collecting evidence and transporting it to BCI. He further admitted that he did not know how State's Exhibit 1 got to BCI. Nevertheless, he confirmed that he received State's Exhibit 1 for testing and that it appeared to be in the same condition as when he tested it. He specified that he placed his initials on the evidence tape when he opened the exhibit, as it was sealed when it came to him.

{¶15} Initially, we note that Ohara's captioned assignment of error only presents us with a challenge to the weight of the evidence. Although Ohara discusses the admissibility of Velton's lab report in the body of his brief, he has not challenged the admissibility of the report in a separate assignment of error. "An appellant's captioned assignment of error 'provides this Court with a roadmap on appeal and directs this Court's analysis.'" *State v. Pleban*, 9th Dist. Lorain No. 10CA009789, 2011-Ohio-3254, ¶ 41, quoting *State v. Marzolf*, 9th Dist. Summit No. 24459, 2009-Ohio-3001, ¶ 16. As such, we decline to address any argument pertaining to the admissibility of Velton's lab report and only consider whether Ohara's conviction is against the

manifest weight of the evidence. *See, e.g., State v. Ross*, 9th Dist. Summit No. 26694, 2014-Ohio-2867, ¶ 68.

{¶16} Ohara argues that the State did not establish a proper chain of custody between the white substance found in his apartment and the white substance tested by BCI. He argues that he only ever admitted to ingesting methamphetamine and, because the State charged him with possessing methoxetamine, it had to prove that the white substance the police found in his apartment was, in fact, methoxetamine.

{¶17} Officer Reed's testimony was that he asked Ohara if he had ingested "meth" and Ohara responded affirmatively. Because Officer Reed referred to the drug as "meth," Ohara's affirmative response could have been an admission that he had ingested either methapmetamine or methoxetamine. Moreover, while Officer Reed tagged the white substance into evidence as methamphetamine, he only did so as a result of his initial field test. Officer Lamm testified that the Akron Police Department routinely submits suspected controlled substances to BCI for confirmatory testing. Ohara was later charged with aggravated possession of methoxetamine because the gas chromatograph mass spectrometer test that BCI later performed revealed the substance contained in State's Exhibit 1 to be methoxetamine.

{¶18} Both Officers Lamm and Reed identified State's Exhibit 1 as the white substance that they collected from the table in Ohara's apartment. They further identified State's Exhibits 2 and 3 as the other items that they collected from the same table. Velten confirmed that he tested State's Exhibit 1 and that it was sealed with evidence tape when he received it. He explained in detail the chain of custody that a piece of evidence goes through when it is submitted to BCI for testing. Although no one specifically testified how Exhibit 1 came to be delivered to BCI from the Akron Police Department for testing, Ohara has not argued that the

State did not satisfy the requirements of admissibility pursuant to Evid.R. 901(A). Instead, he argues that his conviction is against the manifest weight of the evidence because the State's failure to precisely describe how its exhibits were sealed and delivered to BCI minimized their evidentiary value. Thus, Ohara's argument concerning a possible break in the chain of custody goes merely "to the weight or credibility of the evidence, and not its admissibility." *Wingate*, 2013-Ohio-2079, at ¶ 27, quoting *Meyers*, 2008-Ohio-2528, at ¶ 49.

{¶19} Having reviewed the record, we cannot conclude that the trier of fact lost its way when it convicted Ohara of aggravated possession of methoxetamine. The trial court, sitting as the trier of fact, could have reasonably believed that the white substance submitted to BCI for testing was the same white substance that Officers Lamm and Reed collected from Ohara's apartment and identified in court as State's Exhibit 1. This is not the exceptional case in which the evidence weighs heavily against the conviction. *See Martin*, 20 Ohio App.3d at 175; *Otten*, 33 Ohio App.3d at 340. Consequently, Ohara's sole assignment of error is overruled.

III

{¶20} Ohara's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETH WHITMORE
FOR THE COURT

BELFANCE, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.