[Cite as *State v. Dunlap*, 2026-Ohio-1411.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

TODD A. DUNLAP

    Appellant

C.A. No.    24CA012198

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    20CR103518

DECISION AND JOURNAL ENTRY

Dated: April 20, 2026

SUTTON, Judge.

{¶1}    Defendant-Appellant Todd A. Dunlap appeals the judgment of the Lorain County Court of Common Pleas.  For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2}    Mr. Dunlap is A.C.'s uncle.  Mr. Dunlap began sexually abusing A.C. when she was 12 years old.  A.C. spent a lot of time with Mr. Dunlap between the ages of 10 or 11 to age 14 because her parents were going through a divorce.  On November 28, 2003, A.C. was 14 years old and was sleeping over at Mr. Dunlap's apartment with her cousin and brother.  On that date, Mr. Dunlap engaged in oral sex with A.C. and ejaculated into her mouth.  When Mr. Dunlap was not watching, A.C. grabbed a towel that was close by, spit into the towel, and then hid the towel.  Afterwards, A.C. was chatting online with a friend named Nick, who resided in Florida.  A.C. told Nick she had been sexually assaulted by Mr. Dunlap and Nick called the police.  Patrolmen Devin

Small and Jacob Perez of the Amherst Police Department responded to the call and arrived at Mr. Dunlap's apartment to investigate the report. When Patrolmen Small and Perez arrived, they were greeted by Mr. Dunlap, who had been listening to the police scanner and was aware of the report. Mr. Dunlap stated, "I think you're looking for me."

{¶3} A.C. was taken to the Nord Center for a sexual assault nurse examination ("SANE") and a rape kit. Swabs were taken of A.C.'s orifices, including her mouth. However, A.C. had taken a shower and rinsed out her mouth at the insistence of Mr. Dunlap prior to the police arriving at the apartment.

{¶4} The towel into which A.C. spit was collected at the scene and sent to the Ohio Bureau of Criminal Identification and Investigation ("BCI") along with the rape kit for testing. Mr. Dunlap explained to the assigned detective that his DNA and semen may be on the towel because, "he's a single guy, and there could be a reason why[,]" and that "five out of six towels in his apartment may have his semen on them." BCI conducted an analysis and determined that Mr. Dunlap's semen and a fluid consistent with A.C.'s saliva were on the towel together in a very small area on the towel. However, the rape kit contained only A.C.'s DNA.

{¶5} In the initial investigation, A.C. told police she would have "blackouts and then . . . wake up with sticky stuff" on her. The case was presented to the Lorain County Grand Jury, but was "no billed," meaning the grand jury did not indict Mr. Dunlap. When A.C. was in high school, the investigation was reopened after the school hosted an event by the Nord Center which included a display concerning survivors of sexual assault and she was motivated to provide additional information to police but there was no new indictment at that time.

{¶6} In 2020, A.C., who was then 30 years old, contacted law enforcement seeking an update on the investigation. This request was prompted after at a family gathering where A.C.

became concerned when Mr. Dunlap offered to drive a young female family member to a friend's home. A.C. stated to the other adults in attendance, "[i]n the garage. Adults in the garage right now. We need to speak." A.C. gathered the adult relatives and told them what Mr. Dunlap had done to her and warned them against allowing Mr. Dunlap to transport the young relative. A.C. then went to the police because she felt a responsibility to protect others from sexual assault, and the investigation was re-opened.

{¶7}   A.C. told the Amherst Police that she did not black out as she had earlier reported but that she pretended to be hypnotized during the abuse. She also provided the police with additional details about the abuse. Based on this new information, the case was presented to the Lorain County Grand Jury, which indicted Mr. Dunlap on eight counts: one count of rape of a person under thirteen years of age, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree; two counts of rape, in violation of R.C. 2907.02(A)(2), a felony of the first degree; three counts of sexual battery, offender in loco parentis of the victim, in violation of R.C. 2907.03(A)(5), a felony of the third degree; and two counts of unlawful sexual conduct with a minor, in violation of R.C. 2907.04(A) and (B)(3), a felony of the third degree.

{¶8}   Mr. Dunlap waived his right to a jury trial and the matter proceeded to a bench trial. The trial court found him guilty on all eight counts. The trial court sentenced Mr. Dunlap to terms of imprisonment of 10 years to life with the possibility of parole on counts 1-3, the rape counts, to be served consecutively, and imposed no additional sentence for counts 4-8 as they were allied offenses. The trial court also found Mr. Dunlap to be a sexual predator pursuant to Megan's Law, the classification law in effect at the time of the offenses.

{¶9}    Mr. Dunlap has appealed, raising ten assignments of error for our review. To facilitate our analysis, we will group certain assignments of error and address some assignments of error out of order.

II.

### ASSIGNMENT OF ERROR V

**THE GUILTY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.**

### ASSIGNMENT OF ERROR VI

**THE GUILTY VERDICT FOR COUNTS 1, 2, 4, 5, AND 7 IS NOT BASED UPON SUFFICIENT EVIDENCE.**

{¶10}   In his fifth assignment of error, Mr. Dunlap argues his conviction is against the manifest weight of the evidence. In his sixth assignment of error, Mr. Dunlap argues there was insufficient evidence to support his convictions on Count 1 (rape), Count 2 (rape), Count 4 (sexual battery), Count 5 (sexual battery), and Count 7 (unlawful sexual conduct with a minor).

{¶11}   "In determining whether a criminal conviction is against the manifest weight of the evidence an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).

{¶12}  An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340. "[W]e are mindful that the [trier of fact] is free to believe all, part, or none of the testimony of each witness." (Internal quotations and citations omitted.) *State v. Gannon*, 2020-Ohio-3075, ¶ 20 (9th Dist.). "This Court will not overturn a conviction on a manifest weight challenge only because the [trier of fact] found the testimony of certain witnesses to be credible." *Id*.

{¶13}  On the other hand, "[w]hether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 2009-Ohio-6955, ¶ 18 (9th Dist.), citing *Thompkins* at386.  The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring).  For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

{¶14}  Mr. Dunlap, at trial and on appeal, challenges the credibility of A.C.'s testimony. He argues her accounts have changed over the years and she was not able to provide specific dates. At trial, A.C. testified she was not forthcoming at the time of the earlier investigations because she believed she was at fault for the abuse.   In 2020, when A.C. was an adult who had received years of counseling, she was better able to communicate what Mr. Dunlap did to her over the several years that the abuse occurred, and better able to understand that she was not to blame.

{¶15}  Delayed disclosure by a minor victim of sexual assault does not render a conviction against the manifest weight of the evidence. *State v. Hughes-Davis*, 2025-Ohio-3151, ¶ 28 (8th

Dist.), citing *State v. Peterson*, 2024-Ohio-2903, ¶ 20 (8th Dist.). In addition, a conviction is not against the manifest weight of the evidence solely because trier of fact heard inconsistent or contradictory testimony. *State v. Rudd*, 2016-Ohio-106, ¶ 72 (8th Dist.). Again, the trier-of-fact is free to believe all, part, or none of the testimony of a witness.

{¶16} The trial court stated when rendering its verdict that it found the testimony of A.C. to be "very compelling," and took A.C.'s young age during the initial investigations into consideration as well as the fact that she had undergone a lot of counseling when "determining whether or not she's a liar, or whether she was a traumatized 12 or 13 or 14-year old girl, even 17-year-old[.]" At sentencing, the trial court further stated that A.C.'s testimony at trial is "probably as riveting and persuasive and effective as I've ever heard." The trial court clearly found A.C.'s testimony to be credible.

{¶17} In his sixth assignment of error, Mr. Dunlap specifically argues "[t]he only thing supporting [Counts 1, 2, 4, 5, and 7] was her contradictory statements concerning the 'attacks.'" Mr. Dunlap goes on to quote some of A.C.'s inconsistent statements. In his reply brief, Mr. Dunlap continues to argue that A.C.'s testimony is vague, contradictory, and uncorroborated. Mr. Dunlap's argument concerning these counts is premised upon A.C.'s credibility as a witness, which sounds in manifest weight, not sufficiency. *See State v. Sandin*, 2023-Ohio-174, ¶ 15 (9th Dist.) ("An argument that the State failed to prove an element of an offense or set forth inadequate evidence sounds in sufficiency, not weight . . . A manifest weight review examines the persuasiveness of the State's evidence upon a challenge to its reliability or credibility."). Mr. Dunlap does not develop a sufficiency argument concerning Counts 1, 2, 4, 5, and 7, and we will not develop one for him. *See State v. Franks*, 2017-Ohio-7045, ¶ 16 (9th Dist.) ("Where an

appellant fails to develop an argument in support of his assignment of error, this Court will not create one for him.").

{¶18} We have reviewed the record in this matter and cannot say that this is the exceptional case where the trial court lost its way and the evidence weighs heavily against the verdict. The verdict is not against the manifest weight of the evidence. Additionally, Mr. Dunlap has failed to develop a sufficiency argument.

Accordingly, Mr. Dunlap's fifth and sixth assignments of error are overruled.

**ASSIGNMENT OF ERROR I**

**THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO PROVIDE DEFENSE COUNSEL THE GRAND JURY TRANSCRIPTS.**

{¶19} Mr. Dunlap argues the trial court abused its discretion in not ordering the provision of the 2003 and 2020 grand jury transcripts to him.

{¶20} The decision to release grand jury testimony is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *State v. Coley*, 93 Ohio St.3d 253, 261 (2001); *State v. Greer*, 66 Ohio St.2d 139 (1981), paragraph one of the syllabus. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying this standard, a reviewing court is precluded from simply substituting its own judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶21} "Grand jury proceedings are secret, and an accused is not entitled to inspect grand jury transcripts either before or during trial unless the ends of justice required it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *Greer* at paragraph two of the syllabus. "A particularized need is established 'when the circumstances reveal a probability that the failure to provide the grand jury testimony will deny

the defendant a fair trial.'" *State v. Hunter*, 2011-Ohio-6524, ¶ 141, quoting *State v. Sellards*, 17 Ohio St.3d 169, 173 (1985).

{¶22} Mr. Dunlap argues he has a particularized need for the grand jury transcripts because: (1) the first grand jury presentment resulted in a "[n]o [b]ill," but 17 years later Mr. Dunlap was indicted on the charges originally no-billed, as well as additional charges that were not presented to the original grand jury; (2) there were inconsistencies in statements by law enforcement and A.C. and he needs the transcripts to "discern additional inconsistencies;" (3) all of the material evidence submitted to the grand jury in 2003 had been intentionally destroyed by the State; and (4) due to the 17-year delay of the indictment and the destruction of evidence, Mr. Dunlap's counsel was attempting to identify the chain of custody which witnesses could not recall.

{¶23} Mr. Dunlap had initially orally requested the 2003 grand jury transcripts, and the trial court ordered the State to attempt to obtain the transcripts for an in camera review. It is unclear whether the State was able to obtain the 2003 grand jury transcripts. Mr. Dunlap went on to file motions to dismiss for pre-indictment delay and destruction of evidence and neither defense counsel nor the trial court pursued or re-visited the 2003 grand jury transcripts any further. In addition, Mr. Dunlap's trial counsel did not request the 2020 grand jury transcripts at all from the trial court. Therefore, the issue concerning the 2020 grand jury transcripts has been forfeited. Failure to raise an issue at the trial level waives all but plain error. "Pursuant to Crim.R. 52(B), '[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.'" *State v. Horne*, 2011-Ohio-1901, ¶ 24 (9th Dist.). However, Mr. Dunlap has not developed a plain error argument on appeal and this Court will not develop one on his behalf. *State v. Samamra*, 2025-Ohio-126, ¶ 55 (9th Dist.).

{¶24} Accordingly, Mr. Dunlap's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

**THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE MOTION TO DISMISS DUE TO PRE-INDICTMENT DELAY.**

{¶25} Mr. Dunlap argues the trial court erred in not granting his motion to dismiss for pre-trial delay due to the 17-year delay between the initial investigation in 2003 and the 2020 indictment.

{¶26} "'In reviewing a decision on a motion to dismiss for pre-indictment delay, we accord deference to the trial court's findings of fact but engage in a de novo review of the trial court's application of those facts to the law.'" *State v. New*, 2013-Ohio-3193, ¶ 13 (9th Dist.), quoting *State v. Kemp*, 2013-Ohio-167, ¶ 26 (8th Dist.).

{¶27} "When there has been an unjustifiable delay between the commission of an offense and a defendant's indictment for the offense that results in actual prejudice to that defendant, a defendant's right to due process under Section 16, Art. I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution [has] been violated." *State v. Barnhardt*, 2006-Ohio-4531, ¶ 16 (9th Dist.), citing *State v. Luck*, 15 Ohio St.3d 150 (1984), paragraph two of the syllabus. "Following precedent established by the Supreme Court of the United States, the Supreme Court of Ohio outlined a burden-shifting test for determining whether a charge must be dismissed due to a pre-indictment delay." *State v. Saxon*, 2009-Ohio-6905, ¶ 9 (9th Dist.). "*Luck* requires first that the defendant produce evidence demonstrating that the delay has caused actual prejudice to his defense. Then, after the defendant has established actual prejudice, the [S]tate must produce evidence of a justifiable reason for the delay." (Internal citations omitted.) *State v. Whiting*, 84 Ohio St.3d 215, 217 (1998). "If the defendant does not produce evidence of actual prejudice, the court's inquiry ends and the burden does not shift to the State to justify the delay." *Saxon* at ¶ 9.

{¶28} "Unlike a Sixth Amendment speedy-trial claim, no presumption of prejudice arises in the due-process context when a pre[-]indictment delay exceeds a particular length of time." *State v. Adams*, 2015-Ohio-3954, ¶ 98. The determination of "actual prejudice" involves "a delicate judgment based on the circumstances of each case." *United States v. Marion*, 404 U.S. 307, 325 (1971). In making this assessment, courts are to consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay. *State v. Walls*, 2002-Ohio-5059, ¶ 52. "The burden upon a defendant seeking to prove that pre[-]indictment delay violated due process is 'nearly insurmountable,' especially because proof of prejudice is always speculative." *Adams* at ¶ 100, quoting *United States v. Montgomery*, 491 Fed.Appx. 683, 691 (6th Cir. 2012). "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the [S]tate's evidence and bolster the defense." *State v. Jones,* 2016-Ohio-5105, ¶ 28.

{¶29} Once a defendant establishes actual prejudice as a result of pre-indictment delay, "the prejudice suffered by the defendant must be viewed in light of the [S]tate's reason for the delay." *Luck,* 15 Ohio St.3d at 154. "[A] delay in the commencement of prosecution can be found to be unjustifiable "when the [S]tate, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased." *Id.* at 158. The United States Supreme Court has recognized that "prosecutors do not deviate from 'fundamental conceptions of justice' when they defer seeking indictments until they have probable cause to believe an accused is guilty[.]" *United States v. Lovasco*, 431 U.S. 783, 790-791 (1977), quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).

{¶30} Here, while Mr. Dunlap argues he was prejudiced, he has not demonstrated actual prejudice. As we will explain below, the destruction of the towel is not prejudicial. As for the recording of interviews, Mr. Dunlap has not demonstrated that there were additional contradictions or inconsistencies in the recordings that were not included in the reports made from those recordings.

{¶31} Moreover, even assuming Mr. Dunlap suffered actual prejudice, he cannot demonstrate that the delay was unjustifiable. The delay was justifiable because additional facts were discovered by the State that were not available in 2003. In 2020, the case was reopened when A.C. sought information about the status of the case and provided additional information to police including details of the abuse concerning digital penetration, giving oral sex to Mr. Dunlap, and sexual intercourse. In the first investigation, when A.C. was 14 years old, she had stated she was having blackouts during the sexual assaults. A.C. later reported that she did not "black out," but Mr. Dunlap hypnotized her using a code word or phrase before abusing her. She stated she was never actually hypnotized but pretended to be hypnotized. A.C. also gave more details concerning the sexual abuse by Mr. Dunlap. A victim's inability or unwillingness to talk about the sexual assaults has been recognized as a valid reason for not filing charges until the victim was an adult and willing to talk about the assaults. *See State v. Smiley*, 2025-Ohio-2674, ¶ 49 (8th Dist.).

{¶32} In summary, Mr. Dunlap has not demonstrated that the missing evidence is relevant to his defense and would minimize or eliminate the impact of the State's evidence and bolster his defense. Therefore, he has not shown actual prejudice. In addition, even assuming actual prejudice, the State has shown that the delay between the initial report of sexual assault and the indictment in 2020 was justifiable. A.C. was only 14 years old when the initial report was made.

She was still a teenager in high school when a follow-up to the investigation was done. It was only when she was an adult and provided additional details that Mr. Dunlap was indicted.

{¶33} The trial court did not err when it denied Mr. Dunlap's motion to dismiss based on pre-indictment delay. Accordingly, Mr. Dunlap's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE MOTION TO DISMISS FOR THE STATE'S INTENTIONAL DESTRUCTION OF MATERIAL EVIDENCE.**

{¶34} Mr. Dunlap argues in his third assignment of error that the State intentionally destroyed materials and exculpatory evidence, specifically focusing on a towel and recordings of the victim and witnesses used to create investigative reports. The police department disposed of the evidence after the previous investigation was closed.

{¶35} An appellate court reviews a trial court's decision on a pre-trial motion to dismiss de novo. *State v. Franchi*, 2016-Ohio-1195, ¶ 5 (9th Dist.). The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects an accused from being convicted of a crime when the State either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence. *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). "When the State fails to preserve evidence that is merely '*potentially useful*,' a defendant must demonstrate that the [S]tate acted in bad faith." (Emphasis added.) *Id.*, quoting *Youngblood* at 58; *See also State v. Geeslin*, 2007-Ohio-5239, ¶ 9-10.

{¶36} "Specific tests are applied to determine whether the state's failure to preserve evidence rises to the level of a due process violation. The test depends on whether the lost or destroyed evidence involves 'material exculpatory evidence' or 'potentially useful evidence.'" *State v. Powell*, 2012-Ohio-2577, ¶ 73. Accordingly, we must first determine whether the missing

evidence in this case is material to guilt or punishment or merely potentially useful. *See Geeslin* at ¶ 13. Potentially useful evidence is evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood* at 57. Exculpatory evidence, on the other hand, is defined as "evidence favorable to the accused which, if disclosed and used effectively . . . may make the difference between conviction and an acquittal." *State v. Whalen*, 2008-Ohio-6739, ¶ 8 (9th Dist.), quoting *State v. Rowe*, 92 Ohio App.3d 652, 666 (10th Dist. 1993). Evidence is materially exculpatory when: (1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means. *Trombetta* at 489. The Supreme Court of Ohio has held that, if "missing evidence would not 'challenge the *substance* of the allegations [,]' it 'could not have been materially exculpatory evidence.'" *Franchi* at ¶ 6, quoting *Geeslin* at ¶ 13. *Youngblood* at 58.

{¶37} There is no indication that any of the destroyed evidence was actually exculpatory. Mr. Dunlap repeatedly argues that the missing interview recordings *may have* contained inconsistent statements beyond what was in the written investigative reports. Defense counsel stated at the motion hearing that he intended to call witnesses at trial to testify about A.C.'s inconsistent statements. Therefore, the missing recordings only rise to the level of "potentially useful." As for the missing towel, Mr. Dunlap did not dispute that DNA from his semen would be on the towel. Rather, he explained the presence of his DNA and semen by stating that he often masturbated into towels. Mr. Dunlap further argues that had the towel been available for retesting, new testing may have shown the absence of A.C.'s saliva and DNA on the towel. Again, Mr. Dunlap is arguing that the missing towel may be exculpatory, but has not shown it is "materially exculpatory evidence." At best, he has shown it to be "potentially useful."

{¶38} Mr. Dunlap also mentioned missing DNA swabs from the rape kit, but it is unclear how the swabs, which were negative for Mr. Dunlap's DNA, could be useful to the defense, let alone exculpatory. Because the missing evidence is not materially exculpatory evidence, Mr. Dunlap was required to show that the State acted in bad faith. *Trombetta* at 489.

{¶39} Here, the trial court found the evidence was not materially exculpatory, the defense had other ways to get the inconsistent statements of the victim into evidence, and the destruction of evidence was not done maliciously. In addition, Mr. Dunlap's trial counsel admitted that he had no evidence that the evidence was destroyed in bad faith. Upon review, we conclude the trial court did not err in denying Mr. Dunlap's motion to dismiss based on the destruction of evidence.

{¶40} Accordingly, Mr. Dunlap's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED AND/OR CONSIDERED "OTHER ACTS" EVIDENCE.**

{¶41} Mr. Dunlap argues the trial court abused its discretion in allowing and considering "other acts" by Mr. Dunlap. Evid.R. 404(B) provides in relevant part:

(1) Prohibited uses[:]

Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted uses; notice[:]

This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

{¶42} The "other acts" were: (1) Mr. Dunlap had a teenage friend of his daughter give him a massage; and (2) he had asked another teenage friend of his daughter to allow him to take naked pictures of her.

{¶43} The admission of other acts evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that created material prejudice. *State v. Morris*, 2012-Ohio-2407, ¶ 14; *State v. Diar*, 2008-Ohio-6266, ¶ 66.

{¶44} "Evidence that an accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime or that he acted in conformity with bad character." *State v. Williams*, 2012-Ohio-5695, ¶ 15. However, certain exceptions exist in the law, and evidence of other crimes, wrongs, or acts of an accused may be admissible for other purposes, such as those listed in Evid.R. 404(B); to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *Id.* at ¶ 19.

{¶45} Here, the State argued that the "other acts" evidence was admissible to show intent or absence of mistake. Mr. Dunlap, however, did not claim his acts were a mistake or unintentional, or that A.C. was mistaken. He claimed he did not do the acts and that A.C. was lying. However, the trial was a bench trial. The trial court provisionally allowed the "other acts" evidence, stating that it believed the evidence "may very well fit into the confines of [Evid.R. 404(B)] to permit it to go to issues like intent, absence of mistake, a means that is so similar that it is almost like a fingerprint perhaps[.]" Importantly, the trial court stated, "and if it's not, then I will . . . ignore the testimony, but if it fits within the rule then I will apply it as required by law." Therefore, even if the "other acts" evidence was improper under Evid.R. 404(B)(2), the trial court specifically stated it would disregard the testimony if it was improper. It is presumed the trial court followed the law. "In contrast to juries, judges are presumed to know the law and expected

to consider only relevant, material, and competent evidence during their deliberations." *State v. Thomas*, 2002-Ohio-6624, ¶ 57; *State v. Olah,* 146 Ohio App.3d 586, 593 (9th Dist. 2001).

{¶46} There is nothing in the trial court's statements during its oral delivery of the verdict from the bench or in the written verdict indicating it considered "other acts" evidence in reaching the verdict. The trial court explicitly stated it would not consider the "other acts" evidence if it did not fit into the confines of Evid. R. 404(B). At sentencing, the trial court stated, "[a]lthough this case is based upon only one victim, I - - because I don't have evidence of other victims, although I have suspicions, I'm basing my decision on the evidence in this case only and *what happened to this one particular victim, [A.C.]*." (Emphasis added.) The trial court explicitly stated it based its decision only on what happened to A.C. Accordingly, absent evidence to the contrary, this Court presumes that the trial judge did not consider any improper other acts evidence in determining Mr. Dunlap's guilt.

{¶47} Accordingly, Mr. Dunlap's fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR VII

**[MR. DUNLAP] WAS DENIED DUE PROCESS AND A FAIR TRIAL WITH INSUFFICIENT INDICTMENTS AND INSUFFICIENT DISCOVERY RESPONSES.**

{¶48} In his seventh assignment of error, Mr. Dunlap argues he was denied due process and a fair trial because the indictment did not set forth specific dates but rather set forth a date range, and the State did not provide specific dates in its discovery responses. The State points out that Mr. Dunlap did not raise this issue in the trial court prior to trial and argues that Mr. Dunlap has therefore waived all but plain error, and Mr. Dunlap has not made a plain error argument. We agree. *See State v. Yoho*, 2024-Ohio-1725, ¶ 30 (9th Dist.) (when an appellant fails to argue plain error on appeal, this Court will not develop an argument on his behalf.)

{¶49} However, even if we considered the merits of this assignment of error, we conclude there is no error here. "'[T]he purpose of an indictment is to provide the accused with sufficient notice of the offense, including the essential elements of the crime, with which that individual is charged.'" *State v. Campbell*, 2014-Ohio-1329, ¶ 9 (9th Dist.), quoting *State v. Ebersole*, 1999 WL 980552, *2 (9th Dist. Oct. 27, 1999). "[P]recise times and dates are not ordinarily essential elements of an offense[.]" *State v. Bennett*, 2011-Ohio-6679, ¶ 11 (9th Dist.), quoting *State v. Ritchie*, 1997 WL 164323, *2 (9th Dist. Apr. 2, 1997). "It has been widely held in Ohio that an indictment involving child sexual abuse need not specify exact dates and times of the alleged offenses." *Ritchie* at *2. Those cases often involve "'children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time.'" *State v. Just*, 2012-Ohio-4094, ¶ 9 (9th Dist.), quoting *State v. Mundy*, 99 Ohio App.3d 275, 296 (2d Dist. 1994). "In such cases, the prosecution must set forth a time frame in the indictment and charge the accused with offenses which reasonably fall within that period." *Ritchie* at *2. "[T]he key issue is whether the defendant has notice of the nature of the offense and has been afforded a reasonable opportunity to make a defense." *State v. Williams*, 2011-Ohio-6604, ¶ 6 (9th Dist.).

{¶50} Mr. Dunlap had notice of the nature of the offenses with which he was charged and was afforded a reasonable opportunity to make a defense. Here, the State set forth time frames in the indictment for each count and charged Mr. Dunlap with offenses which reasonably fell within those time periods, as required.

{¶51} Accordingly, Mr. Dunlap's seventh assignment of error is overruled.

**ASSIGNMENT OF ERROR VIII**

**THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED PREJUDICIAL ERROR BY CONSIDERING EVIDENCE THAT DID NOT HAVE A PROPER FOUNDATION AND/OR CHAIN OF CUSTODY.**

**{¶52}** Mr. Dunlap argues the trial court improperly considered evidence that lacked a proper chain of custody, specifically the DNA evidence taken from the towel and the rape kit.

**{¶53}** Chain of custody is part of the authentication and identification requirement for the admission of evidence under Evid.R. 901(A) and the prosecution has the burden of proving the chain of custody of a specific piece of evidence. *State v. Ohara*, 2014-Ohio-5532, ¶ 8 (9th Dist.). However, the prosecution's burden of proving chain of custody is not absolute. *State v. Hickman*, 2002 Ohio-3406, ¶ 20 (9th Dist.). The prosecution is not required to disaffirm all possibilities of evidence tampering or substitution; rather, the prosecution is merely required to "'establish that it is reasonably certain that substitution, alteration, or tampering did not occur.'" *Ohara* at ¶ 8, quoting *Hickman* at ¶ 20. Nor is the State "'required to prove a perfect, unbroken chain of custody.'" *State v. Meyers*, 2008-Ohio-2528, ¶ 49 (9th Dist.), quoting *State v. Semedo*, 2007-Ohio-1805, ¶ 12 (5th Dist.). In addition, "[a]ny breaks in the chain of custody go to the weight afforded to the evidence, not to its admissibility." *Hickman* at ¶ 20; *See also State v. Meyers*, 2008-Ohio-2528, ¶ 49 (9th Dist.).

**{¶54}** Concerning the chain of custody for the towel and the rape kit, the trial court stated:

the evidence which the sample still remained with BCI, and the witnesses from BCI testified that, how they received the items, and that they came from the Amherst Police Department . . . there's no indication that there would be any reason why the exhibits that were tested for DNA had been altered or affected by the police in the transfer.

There's no indication that there was some interruption in the chain of custody from the testimony we had here from the witness who said she gave the towel and the bag [of clothing with the towel inside] to the police, the police officer said he took the bag and gave it to the detective. And then the BCI people explained from their

records that the Amherst Police provided them with the items, they looked at them, and then returned the items to Amherst[.]

. . .

So, the bottom line is, there's nothing to indicate that the items tested by BCI had been tampered with, which would affect the credibility or the accuracy of the testing done.

It would boggle the mind to think that somehow somebody took this towel and put the saliva of the victim, or the ejaculate that was found from [Mr. Dunlap]. How would that have . . . occurred[?]

{¶55} In addition, Detective Molnar testified he physically took the towel and rape kit to BCI as part of his job.

{¶56} Further, Mr. Dunlap admitted to detective Molnar that his DNA may have been on the towel because, "he's a single guy, and there could be a reason why[,]" and that "five out of six towels in his apartment may have his semen on them." At trial, Mr. Dunlap explained, "[w]hen you're a single guy, there's a lot of masturbation that happens, so - - [.]" As for the specific towel, Mr. Dunlap testified, "[t]hat would have been the towel that I would have masturbated in. Pretty regularly."

{¶57} Therefore, Mr. Dunlap did not dispute that DNA from his semen would be on the towel. Further, A.C. testified that she spit on the towel, and earlier testing showed that a fluid consistent with her saliva was found on the towel. Whether the presence of Mr. Dunlap's and A.C.'s DNA on the towel constitutes evidence of rape depends, in part, on the credibility of Mr. Dunlap and A.C. Depending on who the trial court believed, Mr. Dunlap's semen was on the towel because he masturbated into it, or because he ejaculated into A.C.'s mouth and she spit the ejaculate onto the towel.

{¶58} Finally, we note that any purported break in the chain of custody of the towel would go to the weight of the DNA evidence, not its admissibility. Therefore, the trial court did not err in considering as evidence the presence of Mr. Dunlap's and A.C.'s DNA on the towel.

{¶59} Accordingly, Mr. Dunlap's eighth assignment of error is overruled.

## ASSIGNMENT OF ERROR IX

**DUE TO CUMULATIVE ERROR, [MR. DUNLAP] WAS DENIED HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL.**

{¶60} Mr. Dunlap argues he was deprived of a fair trial due to cumulative error. "Under the doctrine of cumulative error, 'a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.'" *State v. Froman*, 2020-Ohio-4523, ¶ 156, quoting *State v. Powell*, 2012-Ohio-2577, ¶ 223. Because Mr. Dunlap has not demonstrated the presence of multiple errors, however, the cumulative error doctrine does not apply in this case. *See State v. Hunter*, 2011-Ohio-6524, ¶ 132.

{¶61} In addition to the specific assignments of error, Mr. Dunlap also argues the trial court erred in allowing portions of A.C.'s journal and testimony about the journal into evidence, but he does not argue how he was prejudiced thereby. The trial court did not mention the journals in delivering the verdict from the bench or in the written verdict. Again, the case was tried before the bench and judges are presumed to know the law and expected to consider only relevant, material, and competent evidence during their deliberations." *See State v. Thomas*, 2002-Ohio 6624, ¶ 57.

{¶62} Mr. Dunlap has not demonstrated error or multiple errors on the part of the trial court, and therefore he cannot demonstrate cumulative error.

{¶63} Accordingly, Mr. Dunlap's ninth assignment of error is overruled.

**ASSIGNMENT OF ERROR X**

**[MR. DUNLAP] WAS DENIED DUE PROCESS OF LAW AND HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.**

{¶64} Mr. Dunlap argues he was deprived of the effective assistance of counsel because trial counsel did not request specificity in the indictment in regard to the dates of two of the three charges of rape, sexual battery, and unlawful sexual conduct with a minor, and did not request the 2020 grand jury transcripts.

{¶65} "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 2006-Ohio-6679, ¶ 62. To prove ineffective assistance of counsel, Mr. Dunlap must establish: (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonable representation. *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. Prejudice can be shown by proving there exists a reasonable probability that, were it not for counsel's errors, the result of the proceedings would have been different. *Id.* at paragraph three of the syllabus. "[T]he Court need not address both *Strickland* prongs if an appellant fails to prove either one." *State v. Lortz*, 2008-Ohio-3108, ¶ 34 (9th Dist.).

{¶66} The defendant bears the burden to overcome the strong presumption that counsel's performance was adequate or that counsel's actions were sound trial strategy. *State v. Edwards*, 2009-Ohio-3558, ¶ 6 (9th Dist.). "Reviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners." *State v. Rafferty*, 2007-Ohio-3997, ¶ 16 (9th Dist.), quoting *State v. McCaleb*, 2004-Ohio-5940, ¶ 111 (11th Dist.). "Debatable trial tactics do not establish ineffective assistance of counsel." *State v. Cepec*, 2016-Ohio-8076, ¶ 111, citing *State v. Leonard*, 2004-Ohio-6235, ¶ 146.

{¶67} Mr. Dunlap argues trial counsel was ineffective by failing to ask for more specific indictments. Therefore, Mr. Dunlap asserts he was denied effective assistance of counsel because specificity was "vital to [his] ability to present a case as to those allegations since they were not an issue in the first Grand Jury and these additional charges included a life sentence[] since it involved sexual conduct with a minor under the age of thirteen[.]" As for his purported need for the 2020 grand jury transcripts, Mr. Dunlap believes the transcripts *may* provide more precise dates than the indictment. "[T]he dates are of extreme importance in the preparation of a defense." In this assignment of error, Mr. Dunlap continues to argue the specific dates of the sexual assaults were essential to his defense. The testimony of A.C. was that the abuse began when she was 12 and ended when she was 14. That date range includes the time period when A.C. was under the age of 13. A.C.'s testimony included where Mr. Dunlap resided when the first incident of sexual abuse occurred when she was 12 years old, which was a different residence than the residence where the offense occurred, for which the investigation was initiated when A.C. was 14 years old. As previously discussed, precise dates are not required in sexual abuse cases involving a child. *State v. Ritchie*, 1997 WL 164323, *2 (9th Dist. Apr. 2, 1997); *Just*, 2012-Ohio-4094, at ¶ 9.. "In such cases, the prosecution must set forth a time frame in the indictment and charge the accused with offenses which reasonably fall within that period." *Ritchie* at *2.

{¶68} Therefore, we cannot say trial counsel was ineffective for not requesting the 2020 grand jury transcripts or insisting on specific dates in the indictments. The indictments set forth time ranges that included when A.C. was under the age of 13. Mr. Dunlap has not established that his trial counsel's representation fell below an objective standard of reasonable representation. Therefore, he has failed to meet his burden under the first prong of *Strickland*.

{¶69} Accordingly, Mr. Dunlap's tenth assignment of error is overruled.

III.

**{¶70}** For the forgoing reasons, Mr. Dunlap's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
STEVENSON, J.
<u>CONCUR.</u>

APPEARANCES:

BRIAN MORIARTY, Attorney at Law, for Appellant.

ANTHONY CILLO, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.